**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AT&T MOBILITY WIRELESS | ) | **Case #1:10-cv-02278** |
| DATA SERVICES SALES TAX | ) | **MDL Docket No. 2147** |
| LITIGATION | ) | **Honorable Amy J. St. Eve** |

## CONSOLIDATED MASTER CLASS ACTION COMPLAINT

Plaintiffs are filing this Consolidated Master Class Action Complaint solely as an MDL administrative and procedural tool. As such, this pleading is not intended to, nor should it be construed as, superseding or supplanting the operative Complaints in the constituent actions in this MDL proceeding.[1] Plaintiffs, individually and on behalf of all persons and entities similarly situated, by and through the undersigned counsel, state and allege as follows:

## THE PARTIES

### ALABAMA

1.      Plaintiff Joseph Phillips is a resident of Sterrett, Alabama residing at 4013 Forest Lakes Road, Sterrett, Alabama 35147. Mr. Phillips is an individual consumer who is a customer of the AT&T Mobility, LLC ("AT & T") and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

2.      Plaintiff James Marc Ruggerio is a resident of Birmingham, Alabama residing at 449 St. Anne's Drive, Birmingham, Alabama 35244. Mr. Ruggerio is an individual consumer

---

[1] To the extent this Master Complaint includes any new plaintiffs or claims, the undersigned counsel will amend the operative Complaints in the constituent actions in this MDL proceeding.

who is a customer of the AT&T Mobility, LLC ("AT & T") and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

3.      Plaintiff Ann Marie Ruggerio is a resident of Birmingham, Alabama residing at - 449 St. Anne's Drive, Birmingham, Alabama 35244.   Ms. Ruggerio is an individual consumer who is a customer of the AT&T Mobility, LLC ("AT & T") and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## ALASKA

4.      Plaintiff Rick Manrique is a resident of Matanuska-Susitna Borough, Alaska, residing at P.O. Box 2811, Palmer, AK 99645.  Rick Manrique is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## ARIZONA

5.      Plaintiff Kirk Tushaus is a resident of Maricopa County, Arizona, residing at 11141 East Ironwood Drive, Scottsdale, AZ 85259-4871.  Kirk Tushaus is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## ARKANSAS

6.      Plaintiff Dorothy Taylor is a resident of White County, Arkansas, residing at 102 Autumn Circle, McRae, Arkansas.   Plaintiff is an individual consumer who is a customer of the AT&T Defendants and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**CALIFORNIA – CENTRAL DISRICT**

7.      Plaintiff John Simon is a resident of  Long Beach, California.   Plaintiff is an

individual consumer who is a customer of the AT&T Defendants and specifically has purchased

a wireless data plan that permits access to the internet by a radio device.

8.      Plaintiff Karl Simonsen is a resident of San Jose, California.   Plaintiff is an

individual consumer who is a customer of the AT&T Defendants and specifically has purchased

a wireless data plan that permits access to the internet by a radio device.

9.      Plaintiff Christopher Jacobs is a resident of Los Angeles, California.   Plaintiff is

an individual consumer who is a customer of the AT&T Defendants and specifically has

purchased a wireless data plan that permits access to the internet by a radio device.

**CALIFORNIA – SAN DIEGO**

10.      Plaintiff Donald Sipple is a resident of Montecito, California.  Plaintiff is an

individual consumer who is a customer of the AT&T Defendants and specifically has purchased

a wireless data plan that permits access to the internet by a radio device.

**COLORADO**

11.      Plaintiff William A. Wieland is a resident of Douglas County, Colorado, residing

at 7535 Berkshire Lane, Castle Rock, CO 80108.   William A. Wieland is an individual

consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless

data plan that permits access to the internet by a radio device.

**CONNECTICUT**

12.      Plaintiff David Rock is a resident of Fairfield County in the State of Connecticut

residing in Stamford Connecticut. Plaintiff is an individual consumer who is a customer of

AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## DISTRICT OF COLUMBIA

13.     Plaintiff Andy Armstrong is a resident of the District of Columbia, residing at 1530 8th Street, N.W., Washington, D.C. 20001.  Mr. Armstrong is an individual consumer who is a customer of AT&T Mobility and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## FLORIDA

14.     Plaintiff Adrienne D. Munson is a resident of Wellington, Florida residing at - 12689 Guilford Circle, Wellington, Florida 33414-6504.   Ms. Munson is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## GEORGIA

15.     Plaintiff Robert Wilhite is a resident of Gwinnett County, Georgia residing at 1639 Tailmore Lane, Lawrenceville, Georgia 30043-7862.  Mr. Wilhite is an individual consumer who is a customer of the AT&T Mobility Corporation ("AT & T") and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## HAWAII

16.     Plaintiff David Guerrero is a resident of Honolulu County, Hawaii, residing at 1075 Puolo Drive, Honolulu, Hawaii 96818.  Mr. Guerrero is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**ILLINOIS**

17.     Plaintiff Christopher R. Havron is a citizen of the State of Illinois, residing at 6033 Cherokee Avenue, Glen Carbon, Illinois.  Mr. Havron is an individual consumer who is a customer of AT&T and specifically has purchased from AT&T a wireless data plan that permits access to the internet by a radio device.

**INDIANA**

18.     Plaintiff Martin Hoke is a resident of Lake County, Indiana, residing at 728 C, Newcastle Drive, Schererville, Indiana.  Martin Hoke is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**IOWA**

19.     Plaintiff Penny Annette Wood is a resident of Wapello County, Iowa, residing at 11516 Angle Road, Ottumwa, Iowa 52501.   Plaintiff, Penny Annette Wood is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**KANSAS**

20.     Plaintiff Christopher Hendrix is a resident of Johnson County, Kansas, residing at 4211 West 74th Street, Prairie Village, Kansas 66208.  Mr. Hendrix is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**KENTUCKY**

21.     Plaintiff Heather Rahn is a resident of Campbell County, Kentucky, residing at 1035 Park Avenue, Newport, Kentucky.  Heather Rahn is an individual consumer who is a

customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## LOUISIANA

22.     Plaintiff Heather Mazeitis is a resident of Evangeline Parish, Louisiana, residing at 1125 Beacon Lane, Mamou, Louisiana. Heather Mazeitis is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## MAINE

23.     Plaintiff Jamie Kilbreth is a resident of Cumberland County, Maine, residing at 101 Pine Street, Portland, Maine 04102. Jamie Kilbreth is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## MARYLAND

24.     Plaintiff Bonnae Meshulam is a resident of Carroll County, Maryland, residing at 3485 Lawndale Road, Reisterstown, Maryland 21136. Ms. Meshulam is an individual consumer who is a customer of AT&T Mobility and specifically has purchased a wireless data plan that permits access to the internet by a radio device, i.e. her iPhone also referred to as a "smart phone."

## MASSACHUSETTS

25.     Plaintiff Lesley Rock is a resident of Suffolk County, Commonwealth of Massachusetts, residing at 99 Myrtle Street, Boston, MA, 02114, and is a customer of AT&T Mobility, LLC who has purchased a wireless data plan that permits access to the internet through her "I-Phone."

**MICHIGAN**

26.     Plaintiff Kathy Johnson is a resident of Oakland County, Michigan, residing at 3250 Coolidge Highway, Berkley, MI 48072.   Kathy Johnson is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**MINNESOTA**

27.     Plaintiff Aaron White is a resident of Blue Earth County, Minnesota, residing at 524 North Fifth Street, #1, Mankato, Minnesota, 56001. White is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the Internet by a radio device.

**MISSISSIPPI**

28.     Plaintiff Michael Bosarge is a resident of Jackson County, residing at 815 Grant Avenue, Pascagoula, MS 39567, and is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the Internet by a radio device.

29.     Plaintiff Richard Garner is a resident of Hinds County, residing at 2214 East Manor Drive, Jackson, MS 39211, and individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the Internet by a radio device.

**MISSOURI**

30.     Plaintiff Sara Parker Pauley is a resident of Boone County, Missouri, residing at 5701 Claysville Road, Hartsburg, Missouri.   Ms. Pauley is an individual consumer who is a

customer of the AT&T Defendants and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

31.     Plaintiff Bert B. Kimble is a resident of Cole County, Missouri, residing 2618 Briarwood Drive, Jefferson City, Cole County, Missouri 65109, (573) 301-4940.  Dr. Kimble is an individual consumer who is a customer of the AT&T Defendants and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**NEBRASKA**

32.     Plaintiff Matthew Cranford is a resident of Lancaster County, Nebraska and is an individual consumer who is a customer of the AT&T Defendants and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**NEVADA**

33.     Plaintiff Audrey J. Mitchell is a resident of Clark County, Nevada, residing at 8676 Toscana Lane, Las Vegas, Nevada.  Ms. Mitchell is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**NEW HAMPSHIRE**

34.     Plaintiff Heather Feenstra-Kretschmar is a resident of Strafford County, New Hampshire, residing at 26 Otis Road, Somersworth, New Hampshire 03878.  Ms. Feenstra-Kretschmar is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**NEW JERSEY**

35.     Plaintiff Ronald Bendian is a resident of Bergen County, New Jersey, residing at 58 Kiersted Place, Mahwah, New Jersey. Mr. Bendian is an individual consumer who is a customer of the AT&T Defendants and specifically has purchased a wireless data plan that permits its access to the internet by a radio device.

**NEW YORK**

36.     Plaintiff Jonathan Macy is a resident of New York County, New York, residing at 60 West 66th Street, Apt. 18D, New York, NY. Mr. Macy is an individual consumer who is a customer of the AT&T Defendants and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**NORTH CAROLINA**

37.     Plaintiff Adrienne M. Fox is a citizen and resident of Durham, North Carolina. Adrienne Fox is an individual consumer who is a customer of AT&T Mobility LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.   Plaintiff Stephen S. Girard, is a citizen and resident of Mecklenburg County, North Carolina, and is an individual consumer and customer of the Defendant.  Plaintiff purchased a wireless data plan that permits access to the internet by radio device.

**OHIO**

38.     Plaintiffs John and Ellie Wallace are residents of Hamilton County, Ohio, both residing at 6592 Lisa Lane, Cincinnati, Ohio 45243.  John and Ellie Wallace are individual consumers who are customers of AT&T Mobility, LLC and specifically have purchased a wireless data plan that permits access to the internet by a radio device.

## OKLAHOMA

39.     Plaintiff Jane F. Edmonds is a resident of Oklahoma County, Oklahoma.  Ms. Edmonds is an individual consumer who is a customer of the AT&T Defendant and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

40.     Plaintiff Vicki L. Campbell is a resident of Comanche County, Oklahoma.  Ms. Campbell is an individual consumer who is a customer of the AT&T Defendant and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

41.     Plaintiff Vickie C. Leyja is a resident of Comanche County, Oklahoma.  Ms. Leyja is an individual consumer who is a customer of the AT&T Defendant and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## OREGON

42.     Plaintiff Craig Wellhouser is a resident of Clackamas County, Oregon, residing at 1573 8th Avenue, West Linn, Oregon 97068.  Mr. Wellhouser is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## PENNSYLVANIA

43.     Plaintiff Meri Iannetti is a resident of Allegheny County, Pennsylvania, residing in Pittsburgh, Pennsylvania.  Ms. Iannetti is an individual consumer who is a customer of AT&T and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

## PUERTO RICO

44.     Plaintiff Gira L. Osorio is a resident of the City of Carolina, Puerto Rico residing at, Urb Parq Ecuestre, S-22 40th Street, Carolina, PR  00987.  Gira L. Osorio is an individual

consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**RHODE ISLAND**

45.    Plaintiff James Shirley is a resident of Providence County, Rhode Island, residing at 21 Arlington Avenue, Providence, Rhode Island 02903.  James Shirley is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**SOUTH CAROLINA**

46.    Plaintiff Eric Bosse is a resident of Charleston County, South Carolina, residing at 730 Cotillion Place, Mount Pleasant, South Carolina.  Mr. Bosse is an individual consumer who is a customer of AT&T and specifically has purchased a wireless data plan that permits access to the internet by a radio device, i.e. his iPhone also referred to as a "smart phone."

**TENNESSEE**

47.    Plaintiff Randall Shuptrine is a resident of Chattanooga, Tennessee residing at 216 Fairy Trail, Lookout Mountain, Tennessee 37350. Mr. Shuptrine is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**TEXAS**

48.    Plaintiff Harvey Corn is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

49.     Plaintiff Pam Corn is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**UTAH**

50.     Plaintiff Steven A. Devore is a resident of Utah County, Utah residing at 1627 Mountain Oaks Drive, Orem, Utah.  Mr. Devore is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**VERMONT**

51.     Plaintiff William J. Rogers is a resident of Chittenden County, Vermont. Plaintiff is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**VIRGINIA**

52.     Plaintiff James K.S. Stewart is a resident of Falls Church, Virginia, residing at 3705 Tollgate Terrace, Falls Church, Virginia 22041.  Mr. Stewart is an individual consumer who is a customer of AT&T Mobility and specifically has purchased a wireless data plan that permits access to the internet by a radio device,.

**WASHINGTON**

53.     Plaintiff Matthew J. Vickery is a resident of King County, Washington. Mr. Vickery is an individual consumer who is a customer of AT&T Mobility LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**WEST VIRGINIA**

54.     Plaintiff Jill Murphy is a resident of the West Virginia, residing at 1416 Quarier Street, Charleston, West Virginia, 25301. Plaintiff is an individual consumer who is a customer of AT&T Mobility and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**WYOMING**

55.     Plaintiff Miracles Meyer is a resident of Teton County, Wyoming, residing at 3725 Morely Drive, Teton Village, Wyoming 83025. Ms. Meyer is an individual consumer who is a customer of AT&T Mobility, LLC and specifically has purchased a wireless data plan that permits access to the internet by a radio device.

**DEFENDANT**

56.     Defendant AT&T Mobility, LLC is a Delaware corporation. Defendant AT&T Mobility, LLC maintains its principle place of business at 5565 Glenridge Connector, Glenridge Two, Atlanta, GA 30342.

## FACTS COMMON TO ALL COUNTS

57.     AT&T Mobility ("AT&T") sells wireless data plans to consumers by contract on a monthly payment plan. The purchase of a wireless data plan permits purchasers of the plan to obtain access to the internet remotely either on a computer or on a so-called smart phone such as an iPhone, a Blackberry, or a similar device.

58.     AT&T and each Plaintiff entered into written contracts.

59.     The written contract is a form contract used by AT&T with all its customers similarly situated to Plaintiffs.

13

60.     The contract between AT&T and each Plaintiff permits AT&T to charge for its services, including internet access, on a monthly basis and permits AT&T to charge each Plaintiff for all applicable and legally due federal, state and local taxes.

61.     The contract does not permit AT&T to charge Plaintiffs for "taxes" that are not due under law, including taxes for access to the internet.

62.     Where access is by computer only, AT&T charges a monthly fee for the use of a datacard. The datacard permits its user to connect a computer to the internet wirelessly through a radio device embedded in the computer or through a device that connects to the computer through a PCMCIA card or USB port. The data card does not transmit voice or pictures independently of the internet.

63.     Where AT&T's wireless data plans are sold to owners of smart phones, AT&T bills for internet access with a separate line item on the AT&T monthly bill. Generally speaking, the plans cost consumers $30 per month.

64.     For certain kinds of access, AT&T charges owners of smart phones $45 per month for internet access. These "enterprise" plans permit users to access dedicated email servers through the internet.

65.     AT&T states the charges for internet access as a separate charge on its bills to customers.

66.     The Internet Tax Freedom Act, 47 U.S.C. § 151 (1998) as amended, imposes a national moratorium on state and local government taxation on internet access. "No State or political subdivision thereof shall impose any of the following taxes during the period beginning November 1, 2003, and ending November 1, 2014: ... (1) Taxes on Internet access."

14

67.     Under the Internet Tax Freedom Act ("ITFA"), the phrase "internet access" means: "a service that enables users to connect to the Internet to access content, information, or other services offered over the Internet;  (B) includes the purchase, use or sale of telecommunications by a provider of a service described in subparagraph (A) to the extent such telecommunications are purchased, used or sold.-- (i) to provide such service; or (ii)to otherwise enable users to access content, information or other services offered over the Internet[.]"

68.     Despite the prohibition on taxation of internet access under state and federal law imposed by the ITFA, AT&T improperly and illegally charges its customers state and/or local sales tax on internet access on its monthly bills in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia and Wyoming.

69.     For purposes of this Master Complaint, the term "Class" will refer to the claim that AT&T violated the ITFA on a national basis as set out in Count I.  Subclasses will be described for each state.  Each state-specific subclass will aver violations of state specific law. Thus, the term "subclass" will refer to state-specific subclasses pleaded below.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class and Subclasses consisting of all consumers who entered into a contract with AT&T for the provision of internet access through a smart phone or a wireless data card and who

were charged tax on internet access in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia and Wyoming.

71.     Plaintiffs are members of the Class which they seek to represent.

72.     The Consolidated Master Class Action Complaint seeks relief for a Class of Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

> Excluded from the Class are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

73.     The Class alleges a violation of the Internet Tax Freedom Act by AT&T as set out in Count I.

74.     The Class consists of millions of individuals and therefore is so numerous that joinder is impracticable.

75.    Plaintiffs' claims are typical of the claims of the Class and Subclasses because all members of the Class have sustained damages as a result of AT&T's charging of sales tax for internet access.

76.    There are numerous questions of law and fact common to the Class and Subclasses that predominate over any questions affecting only individual class members, including but not limited to the following:

a.    whether AT&T charged the Plaintiffs and the Class and Subclasses sales tax on internet access;

b.    whether AT&T's collection of such taxes violated the Internet Tax Freedom Act;

c.    whether AT&T remitted the collected taxes to various taxing authorities;

d.    whether AT&T should be enjoined from collecting sales tax on internet access;

e.    whether AT&T should be required to seek a refund of sales taxes paid to the state and local tax authorities and to return any tax refund to Plaintiffs and members of the Class and Subclasses .

77.    All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

78.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and Subclasses they seek to represent.  Plaintiffs have no claims antagonistic to those of the Class or Subclasses they seek to represent.  Plaintiffs have retained competent and experienced counsel in complex class actions, mass tort and

products liability litigation. Counsel is committed to the vigorous prosecution of this action.

79.     The prosecution of separate actions by Plaintiffs and individual members of the Class and Subclasses against AT&T would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

80.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

81.     The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases to protect their rights. In the absence of a class action, AT&T will continue to collect sales tax improperly.

82.     Class certification under Rule 23(b)(1) is appropriate because adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications.

83.     Class certification under Rule 23(b)(2) is appropriate because AT&T has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole in that AT&T has refused to cease collecting sales tax for internet access.

84.     Class certification under Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to Plaintiffs and the Class and Subclasses and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

## VIOLATION OF INTERNET TAX FREEDOM ACT

85.     Incorporating by reference paragraphs 57-84 above, Plaintiffs state in addition,

that the Internet Tax Freedom Act, 47 U.S.C. § 151 (1998) ("ITFA") as amended, bars state and

local governments from imposing taxes on internet access.   Section 1101(a) of the ITFA, in its

current form, states:

> "Moratorium.  No State or political subdivision thereof shall impose any of the
>
> following taxes during the period beginning November 1, 2003, and ending
>
> November 1, 2014:
>
> (1) Taxes on Internet access."

86.     Under the ITFA,  the phrase "internet access" means: "a service that enables

users to connect to the Internet to access content, information, or other services offered over the

Internet;  (B) includes the purchase, use or sale of telecommunications by a provider of a service

described in subparagraph (A) to the extent such telecommunications are purchased, used or

sold.-- (i) to provide such service; or (ii)to otherwise enable users to access content, information

or other services offered over the Internet[.]"

87.     Despite the prohibition on taxation of internet access under state and federal law,

AT&T improperly and illegally charges its customers state and/or local sales tax on internet

access on its monthly bills in Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa,

Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota,

Mississippi, Missouri, Montana, Nebraska, New Hampshire, Nevada, New Jersey, New York,

North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South

Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia and Wyoming.

88.     As a result of the violation of the ITFA, Plaintiffs and the Class and Subclasses

were damaged in the amount of sales tax charged by AT&T for Internet access, together with

interest on the money, which AT&T has wrongly charged Plaintiffs and the Class and

Subclasses.

## SUBCLASS CLASS ACTION ALLEGATIONS

89.     The state-specific Plaintiffs bring this action pursuant to Federal Rule of Civil

Procedure 23 on behalf of a Class consisting of all consumers in their individual states who

entered into a contract with AT&T for the provision of internet access through a smart phone or

a wireless data card and who were charged tax on internet access in Alabama, Alaska, Arizona,

Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii,

Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts,

Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, Nevada, New

Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode

Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia

and Wyoming.

90.     The state specific Plaintiffs are members of the subclass which they seek to

represent.

91.     The Consolidated Master Class Action Complaint seeks relief for the Subclasses

described as follows:

All persons or entities who are residents of the named states who are or

were customers of AT&T Mobility and who were charged Internet Taxes on bills

issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from each Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

92.     Each Subclass consists of a minimum of hundreds of persons and therefore is so numerous that joinder is impracticable.

93.     Plaintiffs' claims are typical of the claims of the Subclass because all members of the Subclass have sustained damages as a result of AT&T's charging of sales tax for internet access.

94.     There are numerous questions of law and fact common to the Subclass that predominate over any questions affecting only individual class members, including but not limited to the following:

a.      whether AT&T charged the Plaintiffs and the members of each Subclass sales tax on internet access;

b.      whether AT&T's collection of such taxes violated state law.

c.      whether AT&T remitted the collected taxes to various state and local taxing authorities;

d.      whether AT&T reached its contract by collecting Internet Taxes;

21

e.      whether AT&T breached the covenant of good faith and fair dealing when it collected Internet Taxes;

f.       whether AT&T violated state-specific consumer protection laws by collecting internet taxes;

g.      whether AT&T was unjustly enriched by its collection of internet taxes;

h.      whether AT&T should be enjoined from collecting sales tax on internet access;

i.       whether AT&T should be required to seek a refund of sales taxes paid to the state and local tax authorities and to return any tax refund to Plaintiffs and members of the Class.

95.     All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein as to each Subclass.

96.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Subclass they seek to represent. Plaintiffs have no claims antagonistic to those of the Subclass they seek to represent. Plaintiffs have retained competent and experienced counsel in complex class actions, mass tort and products liability litigation. Counsel is committed to the vigorous prosecution of this action.

97.     The prosecution of separate actions by Plaintiffs and individual members of the Subclass against AT&T would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

98.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

99.     The expense and burden of litigation would substantially impair the ability of the Subclass members to pursue individual cases to protect their rights.  In the absence of a class action, AT&T will continue to collect sales tax improperly.

100.    Class certification under Rule 23(b)(1) is appropriate because adjudications with respect to individual members of the Subclass would as a practical matter be dispositive of the interests of the other members not parties to the adjudications.

101.    Class certification under Rule 23(b)(2) is appropriate because AT&T  has acted or refused to act on grounds generally applicable to the Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Subclass as a whole in that AT&T has refused to cease collecting sales tax for internet access.

102.    Class certification under Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to Plaintiffs and each Subclass and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

## STATE-SPECIFIC COUNTS

## ALABAMA

103.    The averments of paragraphs 57-102 are incorporated by reference.

104.    Plaintiffs Stephanie Diethelm, Ann Marie Ruggerio, James Marc Ruggerio and Joseph Phillips bring this action on behalf of themselves and the Alabama Subclass.

105.    The State of Alabama has "levied a tax on mobile radio communication services as defined in Section 20.3 of Title 47 of the Code of Federal Regulations as in effect on June 1, 1999…" Code of Alabama § 40-21-126.  Under Code of Alabama § 40-21-121 (a), the tax rate is 6 percent. The provider is also entitled "to deduct and retain from the gross amount of tax billed

by the home service provider nine-tenths of one percent of the amount of such tax billed on or

after February 1, 2002" and "one-fourth of one percent of the gross amount of such tax billed"

after October 1, 2002. Code of Alabama § 40-21-121(a).

106.    The definition of "mobile radio communication services" incorporated from

federal regulations does not include internet access services.    The referenced federal regulation

defines "commercial mobile radio service" as a "mobile service that is: (1) "provided for profit,

i.e., with the intent of receiving compensation or monetary gain," (2) an interconnected service;

and (3) available to the public, or to such classes of eligible users as to be effectively available to

a substantial portion of the public." 47 C.F.R. § 20.3. An "interconnected service" is defined as a

service "[t]hat is interconnected with the public switched network, or interconnected with the

public switched network through an interconnected service provider, that gives subscribers the

capability to communicate to or receive communication from all other users on the public

switched network." *Id.*  "Public switched network" is defined as "[a]ny common carrier

network…that use[s] the North American Numbering Plan in connection with the provision of

switched services." *Id*

107.    The North American Numbering Plan (NANP) is an integrated telephone

numbering plan of 24 countries and territories: the United States and its territories, Canada,

Bermuda, and 16 of the Caribbean countries. The NANP is a standardized system of numbering

plan areas (NPA), which have evolved over time into a system of three-digit area codes and

seven-digit telephone numbers. Through this plan, telephone calls can be directed to particular

regions of the larger NANP public switched telephone network (PSTN), where they are further

routed by the local networks.

108.    Internet access does not fall within the definition of mobile radio communication services.

109.    Under Alabama law, internet access charges are not included in the definition of mobile telecommunications services.

110.    There is no Alabama law which permits AT & T Mobility to tax wireless internet access charges.

## ALABAMA SUBCLASS

111.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Alabama
> and who were charged Internet Taxes on bills issued from November 1, 2005
> through [the date immediately preceding the date on which AT&T Mobility first
> issues bill to customers that reflect the billing system changes implemented to
> cease charging Internet Taxes pursuant to Section 8.1].

> Excluded from the Alabama Subclass are: (i) AT&T Mobility, any entity in which
> AT&T Mobility has a controlling interest or which has a controlling interest in
> AT&T Mobility, and AT&T Mobility's legal representatives, predecessors,
> successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's
> employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Alabama Subclass."

## COUNT 2

## BREACH OF CONTRACT

112.    The averments of paragraphs 57-102 are incorporated by reference.

113.    Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiffs and the Subclass purported sales "taxes" for internet access.

114.    In so doing, AT&T breached its contract with Plaintiffs and the Subclass.

115.    As a result of the breach of contract, Plaintiffs and the Subclass were damaged in the amount of the sales "taxes" charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiffs and the Subclass.

## COUNT 3

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

116.    The averments of paragraphs 57-102 are incorporated by reference.

117.    AT&T's breaches of the form Contracts with the Plaintiffs and the Subclass, as alleged above, also constitute a breach of their good faith and fair dealing to the Plaintiffs and the Subclass, which is imputed into every contract in Alabama under the common law of Alabama and the Restatement (Second) of Contracts §205.

118.    AT&T breached its duty of good faith and fair dealing to the Plaintiffs and the Subclass by unfairly charging the Plaintiffs and the Subclass sales "taxes" for internet access.

119.    The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiffs and the Subclass economic damages.

## COUNT 4

## UNJUST ENRICHMENT UNDER STATE LAW

120.    The averments of paragraphs 57-102 are incorporated by reference.

121.    On information and belief, AT&T retains a portion of the amounts collected as purported state and local sales "taxes" for wireless internet access.  AT&T further retains at least

one-fourth of one-percent of the gross amount of such "taxes" billed as a service fee on the collection of such "taxes."

122.    AT&T collects this amount to the detriment of Plaintiffs and members of the Subclass.

123.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

124.    As a result AT&T is unjustly enriched at the expense of Plaintiffs and the Subclass.

125.    Accordingly, Plaintiffs and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT 5

### INJUNCTIVE RELIEF

126.    The averments of paragraphs 57-102 are incorporated by reference.

127.    AT&T's continued charging of Plaintiffs and the Subclass sales "taxes" on the sale of wireless internet access results in a continuing harm to Plaintiffs and the Subclass in that Plaintiffs and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

128.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiffs and the Subclass sales "taxes" on the sale of internet access.

129.    Plaintiffs and the Subclass have no adequate remedy at law in that damages can only address "taxes" that AT&T has already collected on the sale of wireless internet access but cannot address AT&T's ongoing collection of such "taxes" in violation of the law.

27

130.    Plaintiffs and the Subclass have no adequate remedy at law to stop the collection of such "taxes."

131.    Plaintiffs and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying purported "taxes" on the sale of internet access services absent this Court's order enjoining AT&T from the collection of such illegal "taxes."

WHEREFORE, on behalf of themselves and the Subclass, Plaintiffs seek the following relief:

A.    Damages in the amount of "taxes" improperly charged by AT&T on sales of wireless internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.    Disgorgement of all funds collected by AT&T as state and local sales "taxes" on wireless internet access not remitted to the State of Alabama or any local taxing authority and return of such funds to the Plaintiffs and members of the Subclass.

C.    An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of wireless internet access.

D.    Attorneys' fees as permitted by common law, statute, or equity.

E.    Prejudgment interest in the statutory amount.

F.    All costs of this action recovery for which is permitted by law.

G.    Such other and further relief as the Court deems proper.

## ALASKA

132.    The averments of paragraphs 57-102 are incorporated by reference.

133.    Plaintiff Rick Manrique brings this action on behalf of himself and the Alaska Subclass.

28

134.    Cities in Alaska are permitted to levy a sales tax pursuant to § 29.35.10 Rev. Stat. Alaska.  Alaska law does not permit these cities to levy a tax in violation of the ITFA.

135.    The following cities have levied taxes on internet access in violation of the ITFA: Adak,  Alakanuk, Aleknagik, Ambler, Angoon, Aniak, Bethel, Brevig Mission, Buckland, Chefornak, Chevak, Clarks Point, Cordova, Craig, Deering, Dillingham, Diomede, Eek, Elim, Emmonak, False Pass, Fort Yukon, Galena, Gambell, Gustavus, Haines, Hoonah, Hooper Bay, Houston, Hydaburg, Juneau City, Juneau Borough, Kake, Kenai Peninsula Borough, Ketchikan Borough, Kiana, King Cove, Kivalina, Klawock, Kodiak, Kotlik, Kotzebue, Koyuk, Kwethluk, Larson Bay, Manokotak, Marshall, Mekoryuk, Mountain Village, Napakiak, Nenana, Nightmute, Nome, Nondalton, Noorvik, North Pole, Nunam Iqua, Nunapitchuk, Old Harbor, Ouzinkie, Palmer, Pelican, Petersburg, Pilot Station, Point Hope, Port Alexander, Quinhagak, Saint Marys, Saint Michael, Saint Paul Island, Sand Point, Savoonga, Scammon Bay, Selawik, Shaktoolik, Shishmaref, Shungnak, Sitka City/Borough, Skagway, Stebbins, Tanana, Teller, Tenakee, Springs, Thorne Bay, Togiak, Toksook Bay, Unalakleet, Unalaska, Wales, Wasilla, White Mountain, Wrangell, Yakutat Borough.

## ALASKA SUBCLASS

136.    The Consolidated Master Class Action Complaint seeks relief for subclasses of Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Alaska and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

29

Excluded from the Alaska Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Alaska Subclass."

## COUNT 6

## BREACH OF CONTRACT

137. The averments of paragraphs 57-102 are incorporated by reference.

138. Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

139. In so doing, AT&T breached its contract with Plaintiff and the Subclass.

140. As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access.

## COUNT 7

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

141. The averments of paragraphs 57-102 are incorporated by reference.

142. AT&T breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitute a breach of their good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in Alaska under case law so as to effectuate the reasonable intentions of the parties, and is supported by the Restatement (Second) of Contracts §205.

143.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by: unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

144.    The breach was an objective breach of the covenant of good faith and fair dealing in that in charging taxes that it was prohibited from charging under federal law, AT&T acted in a manner that a reasonable person would believe was unfair.

145.    The breach was also subjective because by charging for taxes prohibited by federal law, AT&T was acting in a manner that deprived Plaintiff of the benefit of the contract.

146.    The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 8

## UNJUST ENRICHMENT

147.    The averments of paragraphs 57-102 are incorporated by reference.

148.    Under Alaska law, AT&T may retain a percentage of the state sales tax it collects for itself.  On information and belief, AT&T retains the permitted amount of the state sales tax it collects and thus obtains a legal benefit.

149.    AT&T collects this amount to the detriment of Plaintiff and members of the Subclass and thus appreciates the benefit.

150.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

151.    As a result AT&T is unjustly enriched at the expense of the Plaintiff and the Subclass.

152.    Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT 9

## VIOLATION OF 45.50.471 ALASKA STATUTES

153.    The averments of paragraphs 57-102 are incorporated by reference.

154.    Alaska Consumer Protection Act was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

155.    A sale of services enabling Internet access constitutes "merchandise" within the meaning of Title 45, Chapter 50 of the Alaska Statutes.

156.    In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of § Title 45, Chapter 50.

157.    The aforementioned violations of the § 45.50.471 AS, have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

158.    Plaintiff has been forced to hire attorneys to enforce her rights under the Alaska Consumer Protection Act.

## COUNT 10

## VIOLATION OF  (STATE CONSUMER PROTECTION ACT)

## INJUNCTIVE RELIEF

159.    The averments of paragraphs 57-102 are incorporated by reference.

160.    AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

161.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of § 45.50.471 AS, as pleaded above.

162.    Section 45.50.535 AS permits the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge state and local sales taxes on the sales of internet access.

WHEREFORE, Plaintiff and the Subclass seek the following relief:

A.      Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.      Damages for Plaintiff and the Subclass in the amount of state and local sales tax improperly charged by AT&T on sales of internet access in violation of the state consumer protection laws.

C.      Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state or any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

D.      An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

E.      Attorneys fees as permitted by either the common law, state law, or equity.

F.      Prejudgment interest in the statutory amount.

G.      All costs of this action recovery for which is permitted by law.

H.      Such other and further relief as the Court deems proper.

33

**ARIZONA**

163.     The averments of paragraphs 57-102 are incorporated by reference.

164.     Plaintiff Kirk Tushaus brings this action on behalf of himself and the Arizona Subclass.

165.     Arizona Revised Statutes (hereafter "ARS") §42-5001 et seq. imposes a transaction privilege tax (euphemistically known as a "sales tax") on "telecommunications services," as levied, defined, and classified at ARS § 42-5008 and ARS § 42-5010 (A) (1) (c).

166.     ARS § 42-5064 (A) (2) prohibits the imposition of the tax upon "sales of internet access or application services" to "subscribers and customers." ARS § 42-6004 (A) (9) also prohibits the imposition of municipal taxes upon such sales of internet access or application services.

**ARIZONA SUBCLASS**

167.     The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in Arizona and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].


Excluded from the Arizona Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors,

34

successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's

employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Arizona Subclass."

## COUNT 11

## BREACH OF CONTRACT

168.    The averments of paragraphs 57-102 are incorporated by reference.

169.    Despite the prohibition on state and local taxes imposed by the Internet Tax

Freedom Act, AT&T charged Plaintiff and the Subclass state tax for internet access.

170.    In so doing, AT&T breached its contract with Plaintiff and the Subclass.

171.    As a result of the breach of contract, Plaintiff and the Subclass were damaged in

the amount of tax charged by AT&T for internet access, together with interest on the money

which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 12

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

172.    The averments of paragraphs 57-102 are incorporated by reference.

173.    AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as

alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the

Plaintiff and the Subclass, which is imputed into every contract in Arizona under the common

law of Arizona  and the Restatement (Second) of Contracts §205.

174.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the

Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet

access.

175.     The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 13

## VIOLATION OF ARIZONA CONSUMER PROTECTION ACT

176.     The averments of paragraphs 57-102 are incorporated by reference.

177.     The Arizona Consumer Protection Act, ARS § 44-1521 et seq., was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

178.     A sale of services enabling Internet access constitutes "merchandise" within the meaning of ARS § 44-1521 (5).

179.     In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of ARS § 44-1522 (A).

180.     The aforementioned violations of the Arizona Consumer Protection Act have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

181.     Plaintiff and the Subclass have been forced to hire attorneys to enforce their rights under the Arizona Consumer Protection Act.

## COUNT 14

## VIOLATION OF ARIZONA CONSUMER PROTECTION ACT

### INJUNCTIVE RELIEF

182.     The averments of paragraphs 57-102 are incorporated by reference.

183. AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

184. The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of ARS § 44-1522 (A) as pleaded in Count III above.

185. Arizona law permits the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge state and local taxes on the sales of internet access.

## COUNT 15

### UNJUST ENRICHMENT

186. The averments of paragraphs 57-102 are incorporated by reference.

187. Under ARS § 42-5017, AT&T may obtain a limited tax credit for accounting and reporting the taxes it collects. Moreover, AT&T may have passed on charges it has incurred in collecting, accounting for, and reporting the taxes it has wrongfully collected directly or indirectly to its customers such as Plaintiff and the Subclass.

188. On information and belief, AT&T retains such amounts for its own use.

189. AT&T collects these amounts to the detriment of Plaintiff and members of the Subclass.

190. AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

191. As a result AT&T is unjustly enriched at the expense of Plaintiff and the Subclass.

192. Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT 16

### INJUNCTIVE RELIEF

193.     The averments of paragraphs 57-102 are incorporated by reference.

194.     AT&T's continued charging of Plaintiff and the Subclass of state and local taxes on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

195.     Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

196.     Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local taxes that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

197.     Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

198.     Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

WHEREFORE, Plaintiff on behalf of himself and the Subclass seeks the following relief:

A.       Damages in the amount of state and local taxes improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.     Damages for Plaintiff and the Subclass in the amount of state and local taxes improperly charged by AT&T on sales of internet access in violation of the Arizona Consumer Protection Act.

C.     Disgorgement of all funds collected by AT&T as state and local taxes on internet access not remitted to the state of Arizona or any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

D.     An order of this Court enjoining the collection by AT&T of state and local taxes on sales of internet access.

E.     Attorneys fees as permitted by either the common law, ARS §12-341.01, or equity.

F.     Prejudgment interest in the statutory amount.

G.     All costs of this action recovery for which is permitted by law.

H.     Such other and further relief as the Court deems proper.

### ARKANSAS

199.   The averments of paragraphs 57-102 are incorporated by reference.

200.   Plaintiff Dorothy Taylor brings this action on behalf of herself and the Arkansas Subclass.

201.   Arkansas law imposes a sales tax on "telecommunication services."

202.   Ark. Code Ann. §26-52-315(e)(19)(C), defines "telecommunications services" to exclude charges for internet access from sales tax. "Telecommunications service does not include: …(vi) internet access service."

**ARKANSAS SUBCLASS**

203.     The Consolidated Master Class Action Complaint seeks relief for a subclass of
Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Arkansas
> and who were charged Internet Taxes on bills issued from November 1, 2005
> through [the date immediately preceding the date on which AT&T Mobility first
> issues bill to customers that reflect the billing system changes implemented to
> cease charging Internet Taxes pursuant to Section 8.1].

> Excluded from the Arkansas Subclass are: (i) AT&T Mobility, any entity in
> which AT&T Mobility has a controlling interest or which has a controlling
> interest in AT&T Mobility, and AT&T Mobility's legal representatives,
> predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T
> Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Arkansas Subclass."

**COUNT 17**

**BREACH OF CONTRACT**

204.     The averments of paragraphs 57-102 are incorporated by reference.

205.     Despite the prohibition on state and local taxes imposed by the Internet Tax
Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

206.     In so doing, AT&T breached its contract with Plaintiff and the Subclass.

40

207.    As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 18

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

208.    The averments of paragraphs 57-102 are incorporated by reference.

209.    AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitutes a breach of their good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in Arkansas under the common law of Arkansas and the Restatement (Second) of Contracts §205.

210.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

211.    The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 19

## VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT

## ARK. CODE. ANN. § 4-88-101, *ET SEQ.*

212.    The averments of paragraphs 57-102 are incorporated by reference.

213.    The Arkansas Deceptive Trade Practices Act was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

214.    A sale of services enabling Internet access constitutes "merchandise" within the meaning of Ark. Code Ann. § 4-88-101, *et seq.*

215.    In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T engaged in unconscionable, false, and deceptive practices and acts in violation of Ark. Code Ann. § 4-88-107.

216.    The aforementioned violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

217.    Plaintiff and the Subclass have been forced to hire attorneys to enforce her rights under the Arkansas Deceptive Trade Practices Act.

## COUNT 20

## UNJUST ENRICHMENT UNDER STATE LAW

218.    The averments of paragraphs 57-102 are incorporated by reference.

219.    Under Arkansas law, AT&T may retain 2% of the state sales tax it collects for itself.

220.    On information and belief, AT&T retains the permitted amount of the state sales tax it collects.

221.    AT&T collects this amount to the detriment of Plaintiff and members of the Subclass.

222.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

223.    As a result AT&T is unjustly enriched at the expense of Plaintiff and the Subclass.

224. Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT 21

### INJUNCTIVE RELIEF

225. The averments of paragraphs 57-102 are incorporated by reference.

226. AT&T's continued charging of Plaintiff and the Subclass of state and local sales tax on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

227. Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

228. Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local sales tax that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

229. Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

230. Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local sales taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

WHEREFORE, Plaintiff on behalf of herself and the Subclass seek the following relief:

A.      Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.      Damages for Plaintiff and the Subclass in the amount of state and local sales tax improperly charged by AT&T on sales of internet access in violation of the Arkansas Deceptive Trade Practices Act.

C.      Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state of Arkansas or any local taxing authority and return of such funds to the Plaintiff sand members of the Subclass.

D.      An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

E.      Attorneys fees as permitted by either the common law or equity.

F.      Prejudgment interest in the statutory amount.

G.      All costs of this action recovery for which is permitted by law.

H.      Such other and further relief as the Court deems proper.

## CALIFORNIA – CENTRAL DISRICT

231.    The averments of paragraphs 57-102 are incorporated by reference.

232.    Plaintiffs John Simon, Karl Simonsen and Christopher Jacobs bring this action on behalf of themselves and the California – Central District Subclass.

## CALIFORNIA – CENTRAL DISTRICT SUBCLASS

233.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in the California Central District and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the California Central District Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives. The Subclass shall be known by its state name, "The California – Central District Subclass."

## COUNT 22

## BREACH OF CONTRACT

234.  The averments of paragraphs 57-102 are incorporated by reference.

235.  Despite the prohibition on state and local fees and taxes imposed by the Internet Tax Freedom Act, AT&T charged plaintiffs and the Subclass fees and/or taxes based upon the cost of their internet access.

236.  In doing the acts complained of herein, AT&T breached its contractual obligations to plaintiffs and the putative Subclass causing them damages in an amount to be proven at the time of trial.

## COUNT 23

## VIOLATION OF BUSINESS AND PROFESSIONS CODE, §17200 *ET SEO.*

237.    The averments of paragraphs 57-102 are incorporated by reference.

238.    By collecting charges that are unlawful, deceptive and/or unfair, as alleged herein,

AT&T violated Business and Professions Code § 17200, *et seq.* causing actual injury to plaintiffs

and each member of the Subclass.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS and the Subclass pray for judgment against Defendant as

follows:

## ON THE FIRST CAUSE OF ACTION

1.    For money damages;

2.    For attorney fees;

3.    For prejudgment interest as allowed by law;

4.    For costs of suit incurred herein; and

5.    For such other relief as the Court deems just and proper.

## ON THE SECOND CAUSE OF ACTION

1.    For disgorgement by Defendant of all amounts that have been obtained

in connection with any of the deceptive, unfair and/or unlawful business practices alleged herein;

2.    For restitution according to proof;

3.    For attorney fees;

4.    For prejudgment interest as allowed by law;

5.    For costs of suit incurred herein; and

6.    For such other relief as the Court deems just and proper.

**CALIFORNIA – SAN DIEGO**

239.     The averments of paragraphs 57-102 are incorporated by reference.

240.     Plaintiff Donald Sipple brings this action on behalf of himself and the California – San Diego Subclass.

## CALIFORNIA- SAN DIEGO SUBCLASS

241.     The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in California – San Diego and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the California Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The California – San Diego Subclass."

## COUNT 24

## BREACH OF CONTRACT

242.     The averments of paragraphs 57-102 are incorporated by reference.

243.     Despite the prohibition on state and local fees and taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass fees and/or taxes based upon the cost of his internet access.

244.     In doing the acts complained of herein, AT&T breached its contractual obligations to Plaintiff and the putative Subclass causing him damages in an amount to be proven at the time of trial.

## COUNT 25

## VIOLATION OF BUSINESS AND PROFESSIONS CODE, §17200 *ET SEQ.*

245.     The averments of paragraphs 57-102 are incorporated by reference.

246.     In failing to inform the Plaintiffs and the Subclass that it intended to charge them fees and taxes that were not due, and in collecting charges that are unlawful, deceptive and/or unfair, AT&T violated Business and Professions Code § 17200.

247.     Specifically, in doing the acts complained of herein, AT&T engaged in conduct in contravention of California Law.

## PRAYER

WHEREFORE, Plaintiff and the Subclass pray for relief as follows:

## ON THE FIRST CAUSE OF ACTION

1.     For money damages;

2.     For attorney and paralegal fees;

3.     For prejudgment interest as allowed by law;

4.     For costs of suit incurred herein; and

5.     For such other relief as the Court deems just and proper.

## ON THE SECOND CAUSE OF ACTION

1.    For disgorgement by Defendant of all amounts that have been obtained in connection with any of the deceptive, unfair and/or unlawful business practices alleged herein;

2.    For restitution according to proof;

3.    For attorney and paralegal fees;

4.    For prejudgment interest as allowed by law;

5.    For costs of suit incurred herein; and

6.    For such other relief as the Court deems just and proper.

## COLORADO

248.    The averments of paragraphs 57-102 are incorporated by reference.

249.    Plaintiff William A. Wieland brings this action on behalf of himself and the Colorado Subclass.

250.    C.R.S. 39-26-104 (1)(c)(I), imposes a sales tax on "telecommunications service":

*"Upon telephone and telegraph services, whether furnished by public or private corporations or enterprises for all intrastate telephone and telegraph service. On or after August 1, 2002, mobile telecommunications service shall be subject to the tax imposed by this section only if the service is provided to a customer whose place of primary use in within Colorado and the service originates and terminates within the same state. In accordance with the "Mobile Telecommunications Sourcing Act", 4 U.S.C. secs. 116 to 124, as amended, on or after August 1, 2002, mobile telecommunications service provided to a customer whose place of primary use is outside the borders of the state of Colorado is exempt for the tax imposed by this sections."*

251.   C.R.S. 39-26-706 (2)(a), defines "internet access services" to exclude charges for internet access from sales tax.

> *"On and after May 1, 1998, internet access services, as defined in section 24-79-102(2)(b), C.R.S., shall be exempt from taxation under the provisions of part 1 of this article."*

## COLORADO SUBCLASS

252.   The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in Colorado and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the Colorado Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Colorado Subclass."

## COUNT 26

## BREACH OF CONTRACT

253.   The averments of paragraphs 57-102 are incorporated by reference.