254. Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

255. In so doing, AT&T breached its contract with Plaintiff and the Subclass.

256. As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 27

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

257. The averments of paragraphs 57-102 are incorporated by reference.

258. AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in Colorado under the common law of Colorado and the Restatement (Second) of Contracts §205.

259. AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

260. The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 28

### VIOLATION OF COLORADO CONSUMER PROTECTION ACT

261. The averments of paragraphs 57-102 are incorporated by reference.

262. The Colorado Consumer Protection Act (C.R.S. 6-1-101 et seq.) was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

263.    A sale of services enabling Internet access when associated with the charging and collection of taxes that are not recoverable by law, constitutes a deceptive trade practice meaning of C.R.S. 6-1-105.

264.    In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due, and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of services in violation of C.R.S. § 6-1-105.

265.    The aforementioned violations of the Colorado Consumer Protection Act have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

266.    Plaintiff and the Subclass have been forced to hire attorneys to enforce his rights under the Colorado Consumer Protection Act.

## COUNT 29

## VIOLATION OF COLORADO CONSUMER PROTECTION ACT

## INJUNCTIVE RELIEF

267.    The averments of paragraphs 57-102 are incorporated by reference.

268.    AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

269.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of the Colorado Consumer Protection Act.

270.     C.R.C.P. 65 and F.R.C.P. 65 permit the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge state and local sales taxes on the sales of internet access.

## COUNT 30

## INJUNCTIVE RELIEF

271.     The averments of paragraphs 57-102 are incorporated by reference.

272.     AT&T's continued charging of Plaintiff and the Subclass of state and local sales tax on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

273.     Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

274.     Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local sales tax that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

275.     Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

276.     Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local sales taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Subclass, seeks the following relief:

A.      Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.      Damages for Plaintiff and the Subclass in the amount of state and local sales tax improperly charged by AT&T on sales of internet access.

C.      Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state of Colorado or any local taxing authority and the return of such funds to the Plaintiff and members of the Subclass.

D.      An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

E.      All remedies as set forth in C.R.S. 6-1-112 (1)(2)(3).

F.      Attorneys fees as permitted by the common law, the Colorado Consumer Protection Act, or equity.

G.      Prejudgment interest in the statutory amount.

H.      All costs of this action recovery for which is permitted by law.

I.      Such other and further relief as the Court deems proper.

## CONNECTICUT

277.    The averments of paragraphs 57-102 are incorporated by reference.

278.    Plaintiff David Rock brings this action on behalf of himself and the Connecticut Subclass.

279.    Connecticut General Statues § 12-407, *et seq*. imposes a sales tax on "telecommunications service."  Connecticut General Statutes Section § 12-408 provides that "[f]or the privilege of making any sales, [of telecommunications service] at retail, in this state for

a consideration, a tax is hereby imposed on all retailers at the rate of five and one-half percent of the gross receipts of any retailer . . ."

Connecticut General Statues § 12-407(a)(26)(A), defines "telecommunications services" to exclude charges for internet access from sales tax. That Section provides that "[t]elecommunications service" does not include . . . (x) Internet access service."

## CONNECTICUT SUBCLASS

280.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in Connecticut and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the Connecticut Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Connecticut Subclass."

## COUNT 31

## BREACH OF CONTRACT

281.    The averments of paragraphs 57-102 are incorporated by reference.

282.     Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

283.     In so doing, AT&T breached its contract with Plaintiff and the Subclass.

284.     As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 32

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

285.     The averments of paragraphs 57-102 are incorporated by reference.

286.     AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in Connecticut under the common law of Connecticut and the Restatement (Second) of Contracts §205.

287.     AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

288.     The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 33

### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

289.     The averments of paragraphs 57-102 are incorporated by reference.

290.    The Connecticut Unfair Trade Practices Act ("CUTPA") was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.  In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of CUTPA.

291.    The conduct of defendant described herein: 1) offends public policy; 2) is immoral, unethical, oppressive or unscrupulous; 3) causes substantial injury to consumers.

292.    The aforementioned violations of CUTPA have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

## COUNT 34

## VIOLATION OF  THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

## INJUNCTIVE RELIEF

293.    The averments of paragraphs 57-102 are incorporated by reference.

294.    AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

295.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of CUTPA as pleaded in Count III.

296.    CUTPA permits the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge state and local sales taxes on the sales of internet access.

## COUNT 35

### INJUNCTIVE RELIEF

297. The averments of paragraphs 57-102 are incorporated by reference.

298. AT&T's continued charging of Plaintiff and the Subclass of state and local sales tax on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

299. Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

300. Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local sales tax that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

301. Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

302. Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local sales taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

WHEREFORE, Plaintiff on behalf of herself and the Subclass seeks the following relief:

A. Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B. Damages for Plaintiff and the Subclass in the amount of state and local sales tax improperly charged by AT&T on sales of internet access in violation of CUTPA.

C.      Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state of Connecticut or any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

D.      An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

E.      Attorneys fees as permitted by either the common law, CUTPA or in equity.

F.      Prejudgment interest in the statutory amount.

G.      All costs of this action recovery for which is permitted by law.

H.      Such other and further relief as the Court deems proper.

## DISTRICT OF COLUMBIA

303.    The averments of paragraphs 57-102 are incorporated by reference.

304.    Plaintiff Andy Armstrong brings this action on behalf of himself and the District of Columbia Subclass.   The District of Columbia imposes a 10% tax on all wireless telecommunication companies who sell wireless telecommunication services to District of Columbia residents.  D.C. Stat. Ann. Section 47-3902(b).

## WASHINGTON, D.C. SUBCLASS

305.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in District of Columbia and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

59

Excluded from the District of Columbia Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives. The Subclass shall be known by its state name, "The District of Columbia Subclass."

## COUNT 36

## BREACH OF CONTRACT

306.    The averments of paragraphs 57-102 are incorporated by reference.

307.    Despite the prohibition by the Internet Tax Freedom Act on the imposition of state and local taxes on internet access, AT&T charged Plaintiff and the Subclass local surcharges on internet access.

308.    In so doing, AT&T breached its contract with Plaintiff (and its contracts with the Subclass).

309.    As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of local surcharges collected by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 37

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

310.    The averments of paragraphs 57-102 are incorporated by reference.

60

311.    AT&T entered into a written contract with Plaintiff and members of the Subclass. The common law of District of Columbia implies a covenant of good faith and fair dealing into this contract.

312.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by charging the Plaintiff and the Subclass, unfairly and in violation of the Internet Tax Freedom Act, local surcharges on internet access.

313.    The abovementioned breaches of contract and of the covenant of good faith and fair dealing have caused damages to the Plaintiff and to the Subclass.

## COUNT 38

## INJUNCTIVE RELIEF

314.    The averments of paragraphs 57-102 are incorporated by reference.

315.    AT&T's continued charging of Plaintiff and the Subclass of local surcharges on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect.

316.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass local surcharges on the sale of internet access.

317.    Plaintiff and the Subclass have no adequate remedy at law in that damages can only address local surcharges that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such local surcharges in violation of the law.

318.    Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

319.     Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying local surcharges on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

## COUNT 39

## VIOLATION OF DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

320.     The averments of paragraphs 57-102 are incorporated by reference.

321.     The District of Columbia Consumer Protection Procedures Act ("CPPA") was enacted to protect District of Columbia consumers from "unlawful consumer practices" and provides a private right of action for consumers like Plaintiff.  D.C. Official Code  §38-3901 et seq.  D.C. Official Code §38-3905(k)(1) provides a private right of action and treble damages or $1,500, whichever is greater.

322.     AT&T is a "merchant" as that term is defined in D.C. Official Code §38-3901(a)(3) and is therefore subject to the provisions of the CPPA.

323.     In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of services in violation of D.C. Official Code §38-3904.

324.     The aforementioned violations of the CPPA have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

325.     Plaintiff and the Subclass have been forced to hire attorneys to enforce his rights under the CPPA and seeks all damages available under the CPPA, including attorney fees.

WHEREFORE, Plaintiff, on behalf of himself and the Subclass, requests a trial by jury and seeks the following relief:

A.      Damages in the amount of local surcharges improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.      An order of this Court enjoining the collection by AT&T of local surcharges on sales of internet access.

C.      Attorneys fees as permitted by law.

D.      Prejudgment interest in the statutory amount.

E.      All costs of this action recovery for which is permitted by law.

F.      Such other and further relief as the Court deems proper.

**FLORIDA**

326.    The averments of paragraphs 57-102 are incorporated by reference.

327.    Plaintiff Adrienne D. Munson brings this action on behalf of herself and the Subclass.

328.    Section 202.12, Florida Statutes, imposes a sales tax of 6.8 percent on "communications services." §202.12(1)(a).  That section further provides that "[t]he gross receipts tax imposed by chapter 203 shall be collected on the same taxable [communications] transactions and remitted with the" communications sales tax. §202.12(1)(c). The gross receipts tax rate applied to communications services in Florida is 2.37 percent.  §203.01(1)(b), Fla. Stat. Thus, a combined tax of 9.17 percent is generally levied on communication services in Florida on behalf of the State.

329.     Additionally, local governments within Florida have the discretion to levy a Local Communications Services Tax, which is set by ordinance and varies by county and municipality. §202.19(1)-(2), Fla. Stat.   Currently, the Local Communications Services Tax Rate ranges from .40 percent in Marineland, St. Johns County, to 7.40 percent in unincorporated Alachua County. *See* State of Florida Department of Revenue Communications Services Tax Rate Table *available at* https://geotax.state.fl.us/help/helpJurRate.xls.   The Local Communication Services Tax Rate for Wellington, Plaintiff's city of residence, is 5.52%.  *Id.*

330.     Section 202.11(2)(h), Florida Statutes, defines "communications services" to exclude "Internet access service, electronic mail service, electronic bulletin board service, or similar online computer services."

## FLORIA SUBCLASS

331.     The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Florida and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].
>
> Excluded from the Florida Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors,

64

successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's

employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Florida Subclass."

## COUNT 40

## BREACH OF CONTRACT

332. The averments of paragraphs 57-102 are incorporated by reference.

333. Despite the Internet Tax Freedom Act's prohibition on state and local

governments imposing taxes on internet access, and Florida's law prohibiting the same, AT&T

charged Plaintiff and the Subclass purported "taxes" for wireless internet access.

334. In so doing, AT&T breached its contract with Plaintiff and the Subclass.

335. Is a direct and proximate result of AT&T's breach of contract, Plaintiff and the

Subclass were damaged in the amount of purported "taxes" charged by AT&T for internet

access, together with interest on the money that AT&T has wrongly charged Plaintiff and the

Subclass.

336. As a direct and proximate result of AT&T's breach of contract, Plaintiff and the

Subclass were obligated to retain attorneys to represent her interests in this matter.

337. Any and all conditions precedent to bringing this action have been met or waived.

## COUNT 41

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

338. The averments of paragraphs 57-102 are incorporated by reference.

339. AT&T owed Plaintiff and the Subclass a duty to perform its obligations under the

terms of its form Contracts in good faith.

340.     AT&T's breaches of the form Contracts with Plaintiff and the Subclass, as alleged above, also constitute a breach of their good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every contract in Florida under the common law of Florida and the Restatement (Second) of Contracts §205.

341.     AT&T breached its duty of good faith and fair dealing to Plaintiff and the Subclass by unfairly charging Plaintiff and the Subclass purported "taxes" for internet access.

342.     As a direct and proximate cause of AT&T's breach of its good faith obligations, Plaintiff and the Subclass were damaged in the amount of purported "taxes" charged by AT&T for internet access, together with interest on the money that AT&T has wrongly charged Plaintiff and the Subclass.

343.     As a direct and proximate result of AT&T's breach of its good faith obligations, Plaintiff was obligated to retain attorneys to represent her interests in this matter.

344.     Any and all conditions precedent to bringing this action have been met or waived.

## COUNT 42

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

345.     The averments of paragraphs 57-102 are incorporated by reference.

346.     In failing to inform Plaintiff and the Subclass that it intended to charge purported "taxes" that were not due and in collecting purported "taxes" that were not due to any government entity, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in violation of Florida's Deceptive and Unfair Trade Practices Act.

347. The purpose of Florida's Deceptive and Unfair Trade Practices Act is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce.

348. Florida's Deceptive and Unfair Trade Practices Act is designed to protect not only the rights of litigants, but also the rights of the consuming public at large. When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.

349. The charging of purported state and local sales "taxes" on the sale of wireless internet access when no such tax is due or permitted is a violation of Florida's Deceptive and Unfair Trade Practices Act.

350. As a direct and proximate cause of AT&T's violation of Florida's Deceptive and Unfair Trade Practices Act, Plaintiff and the Subclass were damaged in the amount of purported "taxes" charged by AT&T for internet access, together with interest on the money that AT&T has wrongly charged Plaintiff and the Subclass.

351. As a direct and proximate result of AT&T's violation of Florida's Deceptive and Unfair Trade Practices Act, Plaintiff and the Subclass were obligated to retain attorneys to represent her interests in this matter.

352. Any and all conditions precedent to bringing this action have been met or waived.

353.    AT&T continues to charge Plaintiff and the Subclass purported "taxes" on internet access.  Florida law permits the Court to enter injunctive relief to stop AT&T's violations of law by continuing to charge purported "taxes" for internet access.

## COUNT 43

## UNJUST ENRICHMENT UNDER STATE LAW

354.    The averments of paragraphs 57-102 are incorporated by reference.

355.    Under Florida law, AT&T may retain .75 % of the purported "state taxes" it collects for itself.   Under section 202.28, Florida Statutes, "for the purpose of compensating persons providing communications services for the keeping of prescribed records, the filing of timely tax returns, and the proper accounting and remitting of taxes, persons collecting taxes imposed under this chapter …shall be allowed to deduct 0.75 percent of the amount of the tax due and accounted for and remitted to the department."

356.    On information and belief, AT&T retains all or a portion of the amounts it collects as purported "taxes" for internet access.

357.    AT&T collects and keeps these amounts to the detriment of Plaintiff and members of the Subclass.

358.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

359.    As a result AT&T is unjustly enriched at the expense of Plaintiff and the Subclass.

360.    Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

68

361.    As a direct and proximate result of AT&T's unjust enrichment, Plaintiff and the Subclass were obligated to retain attorneys to represent her interests in this matter.

362.    Any and all conditions precedent to bringing this action have been met or waived.

## COUNT 44

## INJUNCTIVE RELIEF

363.    The averments of paragraphs 57-102 are incorporated by reference.

364.    AT&T's continued charging of Plaintiff and the Subclass purported state and local "taxes" on internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

365.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass purported state and local "taxes" on internet access.

366.    Plaintiff and the Subclass have no adequate remedy at law in that damages can only address purported state and local "taxes" that AT&T has already collected on internet access but cannot address AT&T's ongoing collection of such purported "taxes" in violation of the law.

367.    Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such purported "taxes."

368.    Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying purported state and local "taxes" on internet access absent this Court's order enjoining AT&T from the collection of such "taxes."

WHEREFORE, Plaintiff on behalf of herself and the Subclass seek the following relief:

A.      Damages in the amount of purported state and local "taxes" illegally charged by AT&T for internet access services caused by AT&T's breach of contract and/or breach of the covenant of good faith and fair dealing implied in said contract.

B.      Damages for Plaintiff and the Subclass in the amount of purported state and local "taxes" improperly charged by AT&T for internet access services in violation of Florida law.

C.      Disgorgement of all funds collected by AT&T as purported state and local "taxes" for internet access not remitted to the State of Florida or any local taxing authority and return of such funds to Plaintiff and members of the Subclass.

D.      An order of this Court enjoining the collection by AT&T of purported state and local "taxes" for internet access.

E.      Attorneys' fees as permitted by common law, statute, or equity.

F.      Prejudgment interest in the statutory amount.

G.      All costs of this action, recovery for which is permitted by law.

H.      Such other and further relief as the Court deems just and proper.

**GEORGIA**

369.    The averments of paragraphs 57-102 are incorporated by reference.

370.    Plaintiff Robert Wilhite brings this action on behalf of himself and the Georgia Subclass.

371.    Under Georgia law, internet access charges are not included in the definition of mobile telecommunications services. Under O.C.G.A. Section 48-8-13, "'mobile telecommunications service' means commercial mobile radio service, as such term is defined in *47 C.F.R. Section 20.3* as in effect on June 1, 1999, or as subsequently amended."

70

372.    The definition of "mobile radio communication services" incorporated from federal regulations does not include internet access services.   The referenced federal regulation defines "commercial mobile radio service" as a "mobile service that is: (1) "provided for profit, i.e., with the intent of receiving compensation or monetary gain," (2) an interconnected service; and (3) available to the public, or to such classes of eligible users as to be effectively available to a substantial portion of the public." 47 C.F.R. § 20.3. An "interconnected service" is defined as a service "[t]hat is interconnected with the public switched network, or interconnected with the public switched network through an interconnected service provider, that gives subscribers the capability to communicate to or receive communication from all other users on the public switched network." *Id.* "Public switched network" is defined as "[a]ny common carrier network…that use[s] the North American Numbering Plan in connection with the provision of switched services." *Id.*

373.    The North American Numbering Plan (NANP) is an integrated telephone numbering plan of 24 countries and territories: the United States and its territories, Canada, Bermuda, and 16 of the Caribbean countries. The NANP is a standardized system of numbering plan areas (NPA), which have evolved over time into a system of three-digit area codes and seven-digit telephone numbers. Through this plan, telephone calls can be directed to particular regions of the larger NANP public switched telephone network (PSTN), where they are further routed by the local networks.

374.    Internet access does not fall within the definition of mobile radio communication services.

375.    Under Georgia law and federal law, internet access charges are not included in the definition of mobile telecommunications services.

71

376.    There is no Georgia state or local law which permits AT & T Mobility to tax internet access charges.

## GEORGIA SUBCLASS

377.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Georgia
> and who were charged Internet Taxes on bills issued from November 1, 2005
> through [the date immediately preceding the date on which AT&T Mobility first
> issues bill to customers that reflect the billing system changes implemented to
> cease charging Internet Taxes pursuant to Section 8.1].
>
> Excluded from the Georgia Subclass are: (i) AT&T Mobility, any entity in which
> AT&T Mobility has a controlling interest or which has a controlling interest in
> AT&T Mobility, and AT&T Mobility's legal representatives, predecessors,
> successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's
> employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Georgia Subclass."

## COUNT 45

## BREACH OF CONTRACT

378.    The averments of paragraphs 57-102 are incorporated by reference.

379.    Despite the prohibition against local taxes established by the Internet Tax Freedom Act, AT&T charged Plaintiff purported local sales "taxes" for internet access.

380.    In so doing, AT&T breached its contract with Plaintiff and the Subclass.

381.     As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of the purported local sales "taxes" charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 46

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

382.     The averments of paragraphs 57-102 are incorporated by reference.

383.     AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitute breaches of their good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every contract in Georgia under the common law of Georgia and the Restatement (Second) of Contracts §205.

384.     AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass purported local sales "taxes" for internet access.

385.     The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 47

## VIOLATION OF GEORGIA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

386.     The averments of paragraphs 57-102 are incorporated by reference.

387.     Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-372(a)(12) broadly prohibits "any . . . conduct which similarly creates a likelihood of confusion or of misunderstanding." To prevail in an action under this part, a complainant "need not prove competition between the parties or actual confusion or misunderstanding." O.C.G.A. § 10-1-372(b) (emphasis added).

73

388.    The Georgia UDTPA authorizes injunctive relief.  Injunctive relief under the Georgia Uniform Deceptive Trade Practices Act is available to enjoin any practice that has the potential or likelihood to deceive or confuse in the future, regardless of whether or not such deception or confusion has actually already occurred.

389.    In failing to inform Plaintiff and the Subclass that it intended to charge them "taxes" for internet access that were not due and in collecting purported "taxes" that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of the Georgia Uniform Deceptive Trade Practices Act.

390.    The aforementioned violations of the Georgia Uniform Deceptive Trade Practices Act have caused Plaintiff and the Subclass substantial and ascertainable loss of money and ongoing damages which warrant injunctive relief and attorneys' fees.

391.    AT&T continues to charge Plaintiff and the Subclass purported sales "taxes" on the sale of wireless internet access.

392.    The charging of purported "taxes" on the sale of wireless internet access when no such "tax" is due is a violation of the Georgia Uniform Deceptive Trade Practices Act.

393.    Georgia law permits the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge purported sales "taxes" on the sales of wireless internet access.

## COUNT 48

## UNJUST ENRICHMENT UNDER STATE LAW

394.    The averments of paragraphs 57-102 are incorporated by reference.

395.    On information and belief, AT&T retains part of the amounts collected as purported local sales "taxes" from consumers in Georgia for wireless internet access.

396.    AT&T collects these amounts to the detriment of Plaintiff and members of the Subclass.

397.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

398.    As a result AT&T is unjustly enriched at the expense of Plaintiff and the Subclass.

399.    Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful conduct alleged herein.

## COUNT 49

## INJUNCTIVE RELIEF

400.    The averments of paragraphs 57-102 are incorporated by reference.

401.    AT&T's continued charging of Plaintiff and the Subclass of purported local sales "taxes" on the sale of wireless internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

402.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass purported sales "taxes" on the sale of internet access.

403.    Plaintiff and the Subclass have no adequate remedy at law in that damages can only address purported "taxes" that AT&T has already collected on the sale of wireless internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

404. Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

405. Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying purported "taxes" on the sale of internet access absent this Court's order enjoining AT&T from the collection of such "taxes."

WHEREFORE, Plaintiff on behalf of himself and the Subclass seek the following relief:

A.     Damages in the amount of purported "taxes" improperly charged by AT&T on sales of wireless internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.     Damages for Plaintiff and the Subclass in the amount of purported sales "taxes" improperly charged by AT&T on sales of wireless internet access in violation of federal law and Georgia law.

C.     Disgorgement of all funds collected by AT&T as purported local sales "taxes" on wireless internet access not remitted to any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

D.     An order of this Court enjoining the collection by AT&T of local sales tax on sales of wireless internet access.

E.     Attorneys' fees as permitted by common law, statute, or equity.

F.     Prejudgment interest in the statutory amount.

G.     All costs of this action recovery for which is permitted by law.

H.     Such other and further relief as the Court deems proper.

**HAWAII**

406. The averments of paragraphs 57-102 are incorporated by reference.

407.    Plaintiff David Guerrero brings this action on behalf of himself and the Hawaii Subclass.

408.    Hawaii imposes a state and local Hawaii has a public service company tax pursuant to § 239-2 et seq. (Rev. Stat. Hawaii).  These statutes permit the taxation of intrastate telecommunications only.

409.    Internet access service is not intrastate telecommunications.

## HAWAII SUBCLASS

410.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in Hawaii and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the Hawaii Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Hawaii Subclass."

## COUNT 50

## BREACH OF CONTRACT

411.     The averments of paragraphs 57-102 are incorporated by reference.

412.     Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

413.     In so doing, AT&T breached its contract with Plaintiff and the Subclass.

414.     As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access.

## COUNT 51

## BREACH OF CONVENANT OF GOOD FAITH AND FAIR DEALING

415.     The averments of paragraphs 57-102 are incorporated by reference.

416.     AT&T's breaches of the form Contracts with Plaintiff and the Subclass, as alleged above, also constitute a breach of their good faith and fair dealing to Plaintiff and the Subclass, which is imputed into every Contract in Hawaii under case law so as to effectuate the reasonable intentions of the parties, and is supported by the Restatement (Second) of Contracts §205.

417.     AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by: unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

418.     In charging the taxes prohibited by law AT&T acted in a manner inconsistent with the justified expectations of Plaintiff and the Subclass.

419.     The abovementioned breaches of contract and covenant of good faith and fair dealing have caused Plaintiff and the Subclass economic damages.

## COUNT 52

### UNJUST ENRICHMENT

420.    The averments of paragraphs 57-102 are incorporated by reference.

421.    Under Hawaii law, AT&T may retain a percentage of the state sales tax it collects for itself.

423.    On information and belief, AT&T retains the permitted amount of the state sales tax it collects and thus obtains a legal benefit.

424.    AT&T collects this amount to the detriment of Plaintiff and members of the Subclass and thus appreciates the benefit.

425.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

426.    As a result AT&T is unjustly enriched at the expense of the Plaintiff and the Subclass.

427.    Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT 53

### VIOLATION OF HRS § 480-2 HAWAII STATUTES

428.    The averments of paragraphs 57-102 are incorporated by reference.

429.    The Hawaii Deceptive Practices Act was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

430.    A sale of services enabling Internet access constitutes "merchandise" within the meaning of HRS § 480-2 of the Hawaii Statutes.

79

431.    In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of § 480-2, HRS.

432.    The aforementioned violations of the HRS § 480-2 have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

433.    Plaintiff and the Subclass have been forced to hire attorneys to enforce her rights under the Deceptive Practices Act.

## COUNT 54

## VIOLATION OF HRS 480-2

## INJUNCTIVE RELIEF

434.    The averments of paragraphs 57-102 are incorporated by reference.

435.    AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

436.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of § 480-2, HRS, as pleaded in Count III.

437.    Section 480-13 HRS permits the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge state and local sales taxes on the sales of internet access.

WHEREFORE, Plaintiff, individually and on behalf of the Subclass, seeks the following relief:

A.      Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

B.      Damages for Plaintiff and the Subclass in the amount of state and local sales tax improperly charged by AT&T on sales of internet access in violation of the state consumer protection laws.

C.      Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state or any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

D.      An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

E.      Attorneys fees as permitted by either the common law, state law, or equity.

F.      Prejudgment interest in the statutory amount.

G.      All costs of this action recovery for which is permitted by law.

H.      Such other and further relief as the Court deems proper.

**ILLINOIS**

438.    The averments of paragraphs 57-102 are incorporated by reference.

439.    Plaintiff Christopher Havron brings this action on behalf of himself and the Illinois Subclass.

440.    Section 35 ILCS 630/3 imposes a sales tax on "telecommunications service" in the State of Illinois, providing, in part:

Beginning January 1, 1998, a tax is imposed upon the act or privilege of

originating in this State or receiving in this State intrastate

telecommunications by a person in this State at the rate of 7% of the gross charge for such telecommunications purchased at retail from a retailer by such person. ***However, such tax is not imposed on the act or privilege to the extent such act or privilege may not, under the Constitution and statutes of the United States, be made the subject of taxation by the State.***

§ 35 ILCS 630/3 (emphasis added).

## ILLINOIS SUBCLASS

441. The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in Illinois and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the Illinois Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Illinois Subclass."

**COUNT 55**

**BREACH OF CONTRACT**

442.　The averments of paragraphs 57-102 are incorporated by reference.

443.　Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

444.　In so doing, AT&T breached its contract with Plaintiff and the Subclass.

445.　As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

**COUNT 56**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

446.　The averments of paragraphs 57-102 are incorporated by reference.

447.　AT&T's breaches of the form contracts with the Plaintiff and the Subclass, as alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every contract in Illinois under the common law of Illinois and the Restatement (Second) of Contracts §205.

448.　AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

449.　The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 57

### DAMAGES UNDER THE ILLINOIS CONSUMER FRAUD ACT

450.     The averments of paragraphs 57-102 are incorporated by reference.

451.     The Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq*., was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair practices.

452.     Section 815 ILCS 505/2 prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that other rely upon the concealment, suppression or omission of such material fact, . . . whether any person has in fact been mislead, deceived or damaged thereby.

453.     Pursuant to 815 ILCS § 505/1(b), the term "merchandise" includes any sale of services enabling Internet access.

454.     The acts and practices engaged in by AT&T, as set forth herein, constitute unfair, deceptive and/or fraudulent business practices in violation of 815 ILCS § 505/1 *et seq.*

455.     In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of 815 ILCS § 505.

456.     AT&T intended that the Plaintiff and the Subclass rely on the aforesaid deceptive acts and practices.

457.    The aforesaid deceptive acts and practices occurred in the course of conduct involving trade or commerce.

458.    The aforesaid violations of the Illinois Consumer Fraud Act have caused Plaintiff and the Subclass substantial and ascertainable loss of money and/or property and other damages.

459.    AT&T's conduct as aforesaid was wanton, willful, outrageous and in reckless indifference to the rights of Plaintiff and others similarly situated and, therefore, warrants the imposition of punitive damages.

460.    Plaintiff and the Subclass have been forced to hire attorneys to enforce his rights under the Illinois Consumer Fraud Act.

## COUNT 58

## INJUNCTIVE RELIEF UNDER ILLINOIS CONSUMER FRAUD ACT

461.    The averments of paragraphs 57-102 are incorporated by reference.

462.    AT&T continues to charge Plaintiff and other members of the Subclass state and local sales tax on the sale of internet access.

463.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of 815 ILCS § 505/1 *et seq.*, as pleaded in Count III.

464.    815 ILCS § 505/10 permits the Court to enter injunctive relief to prevent AT&T's continued violation of the law by continuing to charge state and local sales taxes on the sales of internet access.

## COUNT 59

## UNJUST ENRICHMENT

465.    The averments of paragraphs 57-102 are incorporated by reference.

466.    On information and belief, AT&T retains the permitted amount of the state sales tax it collects.

467.    AT&T collects this amount to the detriment of Plaintiff and members of the Subclass.

468.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

469.    As a result AT&T is unjustly enriched at the expense of Plaintiff and the Subclass.

470.    Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT 60

## INJUNCTIVE RELIEF

471.    The averments of paragraphs 57-102 are incorporated by reference.

472.    AT&T's continued charging of Plaintiff and the Subclass of state and local sales tax on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

473.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

474.    Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local sales tax that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

475.    Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

476.    Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local sales taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

WHEREFORE, Plaintiff, individually and on behalf of the Subclass, seeks the following relief:

A.    certification of the proposed Subclass;

B.    actual damages in the amount of all "taxes" improperly charged by AT&T on sales of internet access to Plaintiff and the Subclass;

C.    punitive damages in an amount to punish Defendants' egregious conduct as set forth above and to deter Defendants and others from engaging in similar conduct;

D.    disgorgement of all funds collected by AT&T as "taxes" on internet access not remitted to the state of Illinois or any local taxing authority, and the return of such funds to Plaintiff and members of the Subclass;

E.    this Court's Order enjoining Defendants' collection of "taxes" on sales of internet access;

F.    attorneys' fees and those costs as are available under the law or equity;

G.    prejudgment interest in the statutory amount; and

H.    such other and further relief as the Court deems just and proper.

**INDIANA**

477.    The averments of paragraphs 57-102 are incorporated by reference.

478.    Plaintiff Martin Hoke brings this action on behalf of himself and the Indiana Subclass.

## INDIANA SUBCLASS

479.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Indiana and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].
>
> Excluded from the Indiana Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Indiana Subclass."

## COUNT 61

## BREACH OF CONTRACT

480.    The averments of paragraphs 57-102 are incorporated by reference.

481.    Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

482.    In so doing, AT&T breached its contract with Plaintiff and the Subclass.

483.    As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

**COUNT 62**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

484.    The averments of paragraphs 57-102 are incorporated by reference.

485.    AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in Indiana under the common law of Indiana and the Restatement (Second) of Contracts §205.

486.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

487.    The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

**COUNT 63**

**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**

488.    The averments of paragraphs 57-102 are incorporated by reference.

489.    The Indiana Deceptive Consumer Sales Act was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

490.    A sale of services enabling Internet access constitutes the "subject of a consumer transaction" within the meaning of I.C. 24-5-0.5-2.

491.    In failing to inform Plaintiff and the Subclass that it intended to charge them taxes that were not due and in collecting taxes that were not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of I.C. 24-5-0.5-3(a)(1).

492.    The aforementioned violations of the Deceptive Consumer Sales Act, have caused Plaintiff and the Subclass substantial and ascertainable loss of money or property and other damages.

493.    Plaintiff and the Subclass have been forced to hire attorneys to enforce his rights under the Merchandising Practices Act.

## COUNT 64

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

## INJUNCTIVE RELIEF

494.    The averments of paragraphs 57-102 are incorporated by reference.

495.    AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

496.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of the Indiana Deceptive Consumer Sales Act, as pleaded in Count III.

497.    I.C. 24-5-0.5-4 permits the Court to enter injunctive relief to stop AT&T's violations of the law by continuing to charge state and local sales taxes on the sales of internet access.

90

## COUNT 65

### UNJUST ENRICHMENT UNDER STATE LAW

498.    The averments of paragraphs 57-102 are incorporated by reference.

499.    Under Indiana law, AT&T may retain a specified amount of the state sales tax it collects for itself.

500.    On information and belief, AT&T retains the permitted amount of the state sales tax it collects.

501.    AT&T collects this amount to the detriment of Plaintiff and members of the Subclass.

502.    AT&T thus retains funds that in good conscience and equity it should not be entitled to retain.

503.    As a result AT&T is unjustly enriched at the expense of Plaintiff and the Subclass.

504.    Accordingly, Plaintiff and the Subclass seek full disgorgement and restitution of the amounts AT&T has retained as a result of the unlawful and wrongful conduct alleged herein.

### COUNT 66

### INJUNCTIVE RELIEF

505.    The averments of paragraphs 57-102 are incorporated by reference.

506.    AT&T's continued charging of Plaintiff and the Subclass of state and local sales tax on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

507.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

508.    Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local sales tax that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

509.    Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

510.    Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local sales taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

WHEREFORE, Plaintiff on behalf of himself and the Subclass seeks the following relief:

A.    Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and for breach of the covenant of good faith and fair dealing implied in said contract.

B.    Damages for Plaintiff and the Subclass in the amount of state and local sales tax improperly charged by AT&T on sales of internet access in violation of the Indiana state consumer protection law.

C.    Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state of Indiana or any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

D.    An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

E.      Attorneys fees as permitted by either the common law, Indiana state law, or

equity.

F.      Prejudgment interest in the statutory amount.

G.      All costs of this action recovery for which is permitted by law.

H.      Such other and further relief as the Court deems proper.

**IOWA**

511.    The averments of paragraphs 57-102 are incorporated by reference.

512.    Plaintiff Penny Annette Wood brings this action on behalf of herself and the Iowa

Subclass.

513.     Iowa Code Section 423.2(9), imposes a sales tax on "telecommunications

service":

"A tax of six percent is imposed upon the sales price from any mobile

telecommunications service which this state is allowed to tax by the provisions of

the federal Mobile Telecommunications Sourcing Act, Pub. L. No. 106-252, 4

U.S.C. Section 116 et seq.  For purposes of this subsection, taxes on mobile

telecommunications service, as defined under the federal Mobile

Telecommunications Sourcing Act that are deemed to be provided by the

customer's home service provider, shall be paid to the taxing jurisdiction whose

territorial limits encompass the customer's place of primary use, regardless of

where the mobile telecommunications service originates, terminates or passes

through and shall in all other respects be taxes in conformity with the federal

Mobile Telecommunications Sourcing Act.  All other provisions of the federal

Mobile Telecommunications Sourcing Act are adopted by the state of Iowa and

> incorporated into this subsection by reference. With respect to mobile
>
> telecommunications service under the federal Mobile Telecommunications
>
> Sourcing Act, the director shall, if requested, enter into agreements consistent
>
> with the provisions of the federal Act."

Iowa Code Section 423.20 1 (h), defines "telecommunications services" to exclude
charges for internet access from sales tax.

> "h. "Mobile telecommunications service" means the same as that term is defined
>
> in the federal Mobile Telecommunications Sourcing Act, Pub. L. No. 106-252, 4
>
> U.S.C. Section 124 (7)."

### IOWA SUBCLASS

514. The Consolidated Master Class Action Complaint seeks relief for a subclass of
Plaintiffs described as follows:

> All persons or entities who are or were customers of AT&T Mobility in Iowa and
>
> who were charged Internet Taxes on bills issued from November 1, 2005 through
>
> [the date immediately preceding the date on which AT&T Mobility first issues
>
> bill to customers that reflect the billing system changes implemented to cease
>
> charging Internet Taxes pursuant to Section 8.1].
>
>
> Excluded from the Iowa Subclass are: (i) AT&T Mobility, any entity in which
>
> AT&T Mobility has a controlling interest or which has a controlling interest in
>
> AT&T Mobility, and AT&T Mobility's legal representatives, predecessors,
>
> successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's
>
> employees, officers, directors, agents and representatives.

94

The Subclass shall be known by its state name, "The Iowa Subclass."

## COUNT 67

## BREACH OF CONTRACT

515.    The averments of paragraphs 57-102 are incorporated by reference.

516.    Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.  In so doing, AT&T breached its contract with Plaintiff and the Subclass.

517.    As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 68

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

518.    The averments of paragraphs 57-102 are incorporated by reference.

519.    AT&T's breaches of the form Contracts with the Plaintiff and the Subclass, as alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in  Iowa  under the common law of  Iowa  and the Restatement (Second) of Contracts §205.

520.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

521.    The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 69

## INJUNCTIVE RELIEF

522.    The averments of paragraphs 57-102 are incorporated by reference.

523.    AT&T's continued charging of Plaintiff and the Subclass of state and local sales tax on the sale of internet access results in a continuing harm to Plaintiff and the Subclass in that Plaintiff and the Subclass must pay additional sums of money on a monthly basis that AT&T has no legal right to collect from them.

524.    Unless enjoined from doing so, AT&T will continue to collect from Plaintiff and the Subclass state and local sales tax on the sale of internet access.

525.    Plaintiff and the Subclass have no adequate remedy at law in that damages can only address state and local sales tax that AT&T has already collected on the sale of internet access but cannot address AT&T's ongoing collection of such taxes in violation of the law.

526.    Plaintiff and the Subclass have no adequate remedy at law to stop the collection of such taxes.

527.    Plaintiff and the Subclass seek injunctive relief to relieve them of the continuing and ongoing burden of paying state and local sales taxes on the sale of internet access absent this Court's order enjoining AT&T from the collection of such taxes.

WHEREFORE, Plaintiff on behalf of herself and the Subclass seeks the following relief:

A.    Damages in the amount of state and local sales tax improperly charged by AT&T on sales of internet access for breach of contract and/or for breach of the covenant of good faith and fair dealing implied in said contract.

96

B.     Disgorgement of all funds collected by AT&T as state and local sales tax sales of internet access not remitted to the state of Iowa or any local taxing authority and return of such funds to the Plaintiff and members of the Subclass.

C.     An order of this Court enjoining the collection by AT&T of state and local sales tax on sales of internet access.

D.     Attorneys fees as permitted by either the common law, state law or equity.

E.     Prejudgment interest in the statutory amount.

G.     All costs of this action recovery for which is permitted by law.

F.     Such other and further relief as the Court deems proper.

**KANSAS**

528.    The averments of paragraphs 57-102 are incorporated by reference.

529.    Plaintiff Christopher Hendrix brings this action on behalf of himself and the Kansas Subclass.

530.    K.S.A. §79-3603(b) imposes a state sales tax on "telecommunications services":

"For the privilege of engaging in the business of selling tangible personal

property at retail in this state or rendering or furnishing any of the services

taxable under this act, there is hereby levied and there shall be collected

and paid a tax … upon the gross receipts from intrastate, interstate or

international telecommunications services …"


K.S.A. §79-3602(aaa)(6) defines "telecommunications service" so as to exclude internet access from sales tax.

"Telecommunications service means the electronic transmission, conveyance or routing of voice, data, audio, video or any other information or signals to a point, or between or among points … Telecommunication service does not include internet access service[.]"

## KANSAS SUBCLASS

531.    The Consolidated Master Class Action Complaint seeks relief for a subclass of Plaintiffs described as follows:

All persons or entities who are or were customers of AT&T Mobility in Kansas and who were charged Internet Taxes on bills issued from November 1, 2005 through [the date immediately preceding the date on which AT&T Mobility first issues bill to customers that reflect the billing system changes implemented to cease charging Internet Taxes pursuant to Section 8.1].

Excluded from the Kansas Subclass are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives.

The Subclass shall be known by its state name, "The Kansas Subclass."

## COUNT 70

## BREACH OF CONTRACT

532.    The averments of paragraphs 57-102 are incorporated by reference.

533.    Despite the prohibition on state and local taxes imposed by the Internet Tax Freedom Act, AT&T charged Plaintiff and the Subclass sales tax for internet access.

534.    In so doing, AT&T breached its contract with Plaintiff and the Subclass.

535.    As a result of the breach of contract, Plaintiff and the Subclass were damaged in the amount of sales tax charged by AT&T for internet access, together with interest on the money which AT&T has wrongly charged Plaintiff and the Subclass.

## COUNT 71

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

536.    The averments of paragraphs 57-102 are incorporated by reference.

537.    AT&T's breaches of the form Contracts with Plaintiff and the Subclass, as alleged above, also constitute a breach of AT&T covenant of good faith and fair dealing to the Plaintiff and the Subclass, which is imputed into every Contract in Kansas under the common law of Kansas and the Restatement (Second) of Contracts §205.

538.    AT&T breached its duty of good faith and fair dealing to the Plaintiff and the Subclass by unfairly charging the Plaintiff and the Subclass state and local sales tax for internet access.

539.    The abovementioned breaches of contract and covenant of good faith and fair dealing have caused the Plaintiff and the Subclass economic damages.

## COUNT 72

## VIOLATION OF KANSAS CONSUMER PROTECTION ACT

540.    The averments of paragraphs 57-102 are incorporated by reference.

541.    The Kansas Consumer Protection Act was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

542.    A sale of services enabling internet access constitutes "services" within the meaning of the Kansas Consumer Protection Act, K.S.A. §50-624.

543.    In failing to inform Plaintiff and the Subclass that it intended to charge them tax that was not due and in collecting tax that was not due, AT&T employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of services in violation of K.S.A. §50-626 and §50-627.

544.    The aforementioned violations of the Kansas Consumer Protection Act have caused Plaintiff and the Subclass substantial and ascertainable loss of money, property and/or other damages.

545.    Plaintiff and the Subclass have been forced to hire attorneys to enforce his rights under the Kansas Consumer Protection Act.

## COUNT 73

## VIOLATION OF KANSAS CONSUMER PROTECTION ACT

## INJUNCTIVE RELIEF

546.    The averments of paragraphs 57-102 are incorporated by reference.

547.    AT&T continues to charge Plaintiff and the Subclass state and local sales tax on the sale of internet access.

548.    The charging of state and local sales tax on the sale of internet access when no such tax is due is a violation of K.S.A. §50-626 and §50-627, as pled in Count III.

549.    K.S.A. §50-634 permits the Court to enter injunctive relief to stop AT&T's continuing violation of the law by charging state and local sales taxes on the sale of internet access.

100