**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE: AT&T MOBILITY WIRELESS DATA | ) | MDL No. 2147 |
| SERVICES SALES LITIGATION | ) | |
| | ) | Case No. 10 C 2278 |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Fifty-seven Plaintiffs and Defendant, AT&T Mobility LLC ("AT&T"), have filed a joint

motion ("Motion") in this multidistrict litigation for (1) certification of a settlement class, (2)

preliminary approval of settlement, (3) approval of a proposed class-settlement notice, and (4)

appointment of Analysis Research Planning Corporation ("ARPC") as notice and settlement

administrator. For the following reasons, the Court grants the Motion in large part but reserves

judgment on whether to appoint ARPC as settlement administrator.

### FACTUAL BACKGROUND

The Judicial Panel on Multidistrict Litigation ("JPML") has transferred dozens of actions

to this Court for coordinated pretrial proceedings. (R. 1, 4/7/10 Transfer Order at 3.) Plaintiffs

have alleged that AT&T charges customers for taxes, fees, and surcharges on wireless Internet

data plans for "smart phones" and laptop computers. The Master Complaint alleges that,

"[d]espite the prohibition on taxation of internet access under state and federal law imposed by

the [federal Internet Tax Freedom Act ("ITFA")], AT&T improperly and illegally charges its

customers state and/or local sales tax" on the wireless Internet data plans. (R. 48, Master Compl.

at ¶ 48.) Plaintiffs seek damages, attorneys' fees, costs, and an injunction barring AT&T from

collecting the challenged taxes.

The proposed class plaintiffs are Andy Armstrong, Ronald Bendian, Michael Bosarge, Eric Bosse, Vicki L. Campbell, Harvey Corn, Pam Corn, Matthew Cranford, Steven A. DeVore, Jane F. Edmonds, Heather Feenstra-Kretschmar, Adrienne M. Fox, Richard Garner, Stephen S. Girard, David Guerrero, Christopher R. Havron, Christopher Hendrix, Martin Hoke, Meri Iannetti, Christopher Jacobs, Kathy J. Johnson, Jamie Kilbreth, Bert Kimble, Vickie C. Leyja, Jonathan Macy, Rick Manrique, Heather Mazeitis, Bonnae Meshulam, Miracles Meyer, Audrey J. Mitchell, Adrienne D. Munson, Jill Murphy, Gira L. Osorio, Sara Parker Pauley, Joseph Phillips, Heather Rahn, David Rock, Lesley Rock, William J. Rogers, James Marc Ruggerio, Ann Marie Ruggerio, James Shirley, Randall Shuptrine, John W. Simon, Karl Simonsen, Donald Sipple, James K.S. Stewart, Dorothy Taylor, Kirk Tushaus, Matthew Vickery, John W. Wallace, Eleanor T. Wallace, Craig Wellhouser, Aaron White, William A. Wieland, Robert Wilhite, and Penny Annette Wood, all of whom are named plaintiffs in some of the transferred actions. (R. 50-2, Proposed Settlement Agreement at § 1.4.) The proposed class consists of:

> All persons or entities who are or were customers of AT&T Mobility and who were charged Internet Taxes on bills issued from November 1, 2005 through [the final date on which AT&T Mobility issues bills to customers prior to implementing the billing system changes pursuant to Section 8.1].

> Excluded from the Settlement Class are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives; and (iv) the Court presiding over any motion to approve this Settlement Agreement.

(R. 50-2, Proposed Settlement Agreement at § 7.) Additionally, there are proposed subclasses for plaintiffs within the District of Columbia, Puerto Rico, and states in which AT&T is alleged to have unlawfully collected taxes. (R. 48, Master Compl. at ¶¶ 1-55.) The subclasses are

2

defined as:

> All persons or entities who are or were customers of AT&T Mobility and who were charged Internet Taxes in [STATE] on bills issued from November 1, 2005 through the final date on which AT&T Mobility issues bills to customers prior to implementing the billing system changes pursuant to Section 8.1 of the Settlement Agreement.

> Excluded from the [State] Settlement Class are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives; and (iv) the Court presiding over any motion to approve this Settlement Agreement.

(R. 50, Joint Mem. at 4-5.)

Movants have submitted to the Court a 31-page proposed class-action settlement agreement ("Proposed Settlement Agreement"), seeking to resolve all of their claims. While the Proposed Settlement Agreement is discussed in more detail below, its main provisions provide:

- AT&T will cease charging the challenged taxes within 30 days of a preliminary approval order (R. 50-2, Proposed Settlement Agreement at § 8.1);

- AT&T will provide, seek, and coordinate refunds from the taxing jurisdictions to whom it paid the challenged taxes (*id.* at § 8.3-8.5);

- If a taxing jurisdiction denies a refund claim, AT&T will cooperate if Plaintiffs appeal the denial (*id.* at § 8.9);

- AT&T will remit vendor's compensation[1] (*id.* at § 8.13);

- Plaintiffs will release AT&T of all claims "that were or could have been asserted or sought in the Actions, relating in any way or arising out of (a) AT&T Mobility's charging of the Internet Taxes (as defined in paragraph 1.17) and (b) any and all claims that were asserted or could have been asserted by the Settlement Class in the Actions with respect to AT&T Mobility's charging of taxes, fees or surcharges on internet access allegedly in violation of ITFA, state

---

[1] Vendor's compensation "is generally considered to be compensation for the vendor's collecting and remitting taxes to the Taxing Jurisdiction." (*Id.* at § 1.32.)

and local laws" (*id.* at § 14);

- AT&T will administer and pay for the class notice (*id.* at § 15);

- Plaintiffs will be responsible for payments related to distribution of the settlement fund (*id.*);

- Plaintiffs' counsel will seek a fee "no greater than the lesser of ten percent (10%) of the aggregate value of the settlement or twenty-five percent (25%) of the amounts refunded by Taxing Jurisdictions" (*id.* at § 12);

- Plaintiffs will seek compensation for the class representatives "in an amount not to exceed $5,000 for each state-specific subclass representative from the funds obtained for the Settlement Class" (*id.*);

- The Court will retain jurisdiction over the actions to resolve any disputes regarding the interpretation, enforcement, or implementation of the settlement (*id.* at § 29); and

- Plaintiffs will move to dismiss their actions without prejudice upon final approval and with prejudice upon final distribution of the settlement fund (*id.* at §§ 13, 19).

## ANALYSIS

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S.Ct. 2545, 2557-58 (1979)); *see also Ortiz v. Fireboard Corp.*, 527 U.S. 815, 832, 119 S.Ct. 2295, 2308 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties." (internal quotation omitted)). It "is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 744 (7th Cir.

4

2008); *see also Simer v. Rios*, 661 F.2d 655, 669 n.24 (7th Cir. 1981). In other words, class

actions address the unlikelihood that people will pursue small claims "'by aggregating the

relatively paltry potential recoveries into something worth someone's . . . labor.'" *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 2246 (1997) (quoting *Mace v. Van*

*Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

## I. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a

class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)

(quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)); *Olson v. Brown*, 594

F.3d 577, 584 (7th Cir. 2010), and "provides a one-size-fits-all formula for deciding the class-

action question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, – U.S. –, 130 S.Ct.

1431, 1437 (2010). Courts should exercise caution, however, in certifying classes. *Thorogood*,

547 F.3d at 746. Indeed, "[t]he Supreme Court has made clear that a class 'may only be certified

if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have

been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . .

indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *General Tel.*,

457 U.S. at 160-61, 102 S.Ct. 2364); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558

(7th Cir. 2003) ("Class certification requires a rigorous investigation into the propriety of

proceeding as a class. . . ."). In deciding whether to certify a class, courts generally may not

analyze a class's claims on the merits. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94

S.Ct. 2140, 2152 (1974); *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th

Cir. 1993).

To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook Co.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "'Failure to meet any of the Rule's requirements precludes class certification.'" *Harper*, 581 F.3d at 513 (quoting *Arreola*, 546 F.3d at 794). Satisfaction of these requirements, on the other hand, categorically entitles a plaintiff to pursue her claim as a class action. *See Shady Grove*, 130 S.Ct. at 1437. Where, as here, a putative class seeks both equitable and monetary relief, a court may: (1) certify the class under Rule 23(b)(3) for all proceedings, (2) certify the class under Rule 23(b)(2) for the portion of the case addressing equitable relief and Rule 23(b)(3) for the portion of the case addressing monetary relief, or (3) certify the class under Rule 23(b)(2) for both kinds of relief but provide all class members with personal notice and an opportunity to opt out as though certification were under Rule 23(b)(3). *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("A Court should endeavor to select the most appropriate subsection [of Rule 23(b)], not just the first linguistically applicable one in the list. When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out.").

The fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis. *See Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods.*, 521 U.S. at 619, 117 S.Ct. at 2248. "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried,

6

would present intractable management problems, for the proposal is that there be no trial.'"

*Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620, 117 S.Ct. 2231).  A court may

not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the

settlement is a 'good deal.'  In some ways, the Rule 23 requirements may be even more

important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978,

985 (7th Cir. 2002).  "This is so because certification of a mandatory settlement class, however

provisional technically, effectively concludes the proceeding save for the final fairness hearing."

*Ortiz*, 527 U.S. at 849, 119 S.Ct. at 2316.

Plaintiffs have met their burden of satisfying the Rule 23(a) and (b) requirements.

Accordingly, the Court certifies the class for settlement purposes under Rule 23(b)(3).[2]  *See*

*Ingersoll Int'l*, 195 F.3d at 898 (finding that where, as here, the class seeks substantial damages,

certification should be pursuant to Rule 23(b)(3)).

---

[2]  The class definition is also adequate, as it is limited to "[a]ll persons or entities who are
or were customers of AT&T Mobility and who were charged Internet Taxes on bills issued from
November 1, 2005 through the final date on which AT&T Mobility issues bills to customers
prior to implementing the billing system changes pursuant to Section 8.1 of the Settlement
Agreement." *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977)
(noting that "a class that satisfies all of the other requirements of Rule 23 will not be rejected as
indefinite when its contours are defined by the defendants' own conduct"); *see also Simer*, 661
F.2d at 670 ("Identification of the class serves at least two obvious purposes in the context of
certification.  First, it alerts the court and parties to the burdens that such a process might entail.
In this way the court can decide whether the class device simply would be an inefficient way of
trying the lawsuit for the parties as well as for its own congested docket.  Second, identifying the
class insures that those actually harmed by defendants' wrongful conduct will be the recipients
of the relief eventually provided.").

### A.        Rule 23(a) Requirements

#### 1.        Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  A party seeking class certification "cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impractical for numerosity purposes."  *Arreola*, 546 F.3d at 797 (quoting *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990)).  Ordinarily, however, numerosity is "not difficult to ascertain if a class approach would be useful to avoid the practical problems of trying to join many named plaintiffs or otherwise clog the docket with numerous individual suits." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981); *Subedi v. Merchant*, No. 09 C 4525, 2010 WL 1978693, at *2 (N.D. Ill. May 17, 2010).

Here, the proposed class consists of "[a]ll persons or entities who are or were customers of AT&T Mobility and who were charged Internet Taxes on bills issued from November 1, 2005 through the final date on which AT&T Mobility issues bills to customers prior to implementing the [agreed-to] billing system changes. . . ."  Movants contend that AT&T has over 80 million subscribers, that the class includes 29 million accounts, and that the number of people falling within the class definition is "in the millions."[3]  (R. 50, Joint Mem. at 5, 11.)  Courts in the Seventh Circuit have found that substantially-smaller classes satisfy the numerosity requirement. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (noting that

---

[3]  Interim Class Settlement Counsel represent that there are "roughly 30 million class members."  (R. 65, Interim Class Settlement Counsel's Reply Mem. at 22.)

a group of forty would have been sufficiently large for Rule 23(a) purposes); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) (eighteen class members satisfied numerosity requirement); *Chandler v. S.W. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307-08 (N.D. Ill. 1995) (classes of fifty and one hundred fifty sufficiently numerous); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (twenty-nine-member class is sufficient and collecting cases finding numerosity with fewer class members). Accordingly, the proposed class is so numerous that joinder of all members would be impracticable.

    **2.    Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and "'[a] common nucleus of operative fact is usually enough to satisfy'" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)); *see also Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) ("The commonality requirement does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs, so the low commonality hurdle is easily surmounted." (internal quotation omitted)). "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class," *Keele*, 149 F.3d at 594, and "[t]he fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017; *see also Chandler*, 162 F.R.D. at 307-08 ("It is well established . . . that the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant is engaged in standardized conduct toward the class.").

9

Defendants purportedly engaged in standardized conduct by charging state and local taxes for Internet access services. *See Keele*, 149 F.3d at 594. The proposed class claims also involve common questions of law, including whether the ITFA applies to all of the state and local taxes charged in non-grandfathered states. Further, that "a class is overbroad and should be divided into subclasses is not in itself a reason for refusing to certify the case as a class action," *Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002), and the state-specific subclasses ensure that there will be common questions of state law. While Plaintiffs bring claims that differ somewhat from state to state, that does not pose an insurmountable hurdle because Plaintiffs have requested class certification for settlement purposes only. *See In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001). Because Plaintiffs' claims involve common questions of law and fact, Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

Typicality is closely related to commonality. *See Keele*, 149 F.3d at 594. As the Supreme Court has noted, the commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel.*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371; *see also Mace*, 109 F.3d at 341 ("The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class.").

10

The typicality element broadly requires "'that the claims or defenses of the representative party be typical of the claims or defenses of the class.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana*, 472 F.3d at 514 (quoting *Rosario*, 963 F.2d at 1018). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)); *see also Swanson*, 415 F.2d at 1333 (noting that "the utility of Rule 23 would be destroyed if a class action were denied simply because all of the allegations of the class did not fit together like pieces of a jigsaw puzzle" (internal quotation omitted)).

Plaintiffs' claims are typical of those of the class. As discussed above, the representative parties' and the class's claims relate to Defendants' alleged standardized conduct of charging state and local taxes for Internet access services. That is enough for Rule 23(a)(3) purposes. *See De La Fuente*, 713 F.2d at 232 (finding typicality where "[a]ll members of the class were subject to the same allegedly unlawful practices").

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," which "serves to uncover conflicts of interest between named parties

and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625, 117 S.Ct. at 2250. As

the Supreme Court has observed, the "adequacy-of-representation requirement 'tends to merge'

with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for

determining whether . . . maintenance of a class action is economical and whether the named

plaintiff's claim and the class claims are so interrelated that the interests of the class members

will be fairly and adequately protected in their absence.'" *Id.* at 626 n.20, 117 S.Ct. at 2251

(quoting *General Tel.*, 457 U.S. at 157 n.13, 102 S.Ct. at 2370); *see also Robinson v. Sheriff of*

*Cook Co.*, 167 F.3d 1155, 1157 (7th Cir. 1999) (noting that if a proposed class representative's

claim "is atypical, he is not likely to be an adequate representative; his incentive to press issues

important to other members of the class will be impaired").

> The Seventh Circuit has explained the rationale behind the adequacy requirement:
>
> The class action is an awkward device, requiring careful judicial supervision, because the fate of the class members is to a considerable extent in the hands of a single plaintiff (or handful of plaintiffs, when . . . there is more than one class representative) whom the other members of the class may not know and who may not be able or willing to be an adequate fiduciary of their interests. Often the class representative has a merely nominal stake . . . , and the real plaintiff in interest is then the lawyer for the class, who may have interests that diverge from those of the class members. The lawyer for the class is not hired by the members of the class and his fee will be determined by the court rather than by contract with paying clients. The cases have remarked the danger that the lawyer will sell out the class in exchange for the defendant's tacit agreement not to challenge the lawyer's fee request.

*Culver*, 277 F.3d at 910 (compiling cases); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*

*Co. of Chicago*, 834 F.2d 677, 678 (7th Cir. 1987) ("Class actions differ from ordinary lawsuits

in that the lawyers for the class, rather than the clients, have all the initiative and are close to

being the real parties in interest.").

12

The adequacy-of-representation requirement "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Assoc.*, 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)). Before a court can approve a class settlement, it must assure itself that "the class has been adequately represented during the settlement talks, a conclusion which will not follow automatically from a finding of adequacy for litigation purposes." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.21 (7th Cir. 1979) (quotation omitted).

"Although a representative plaintiff need not immerse himself in the case[,] . . . the named plaintiff must have *some* commitment to the case, so that the 'representative' in a class action is not a fictive concept." *Rand v. Monsanto Co.*, 926 F.2d 596, 598-99 (7th Cir. 1991) (internal citation omitted, emphasis in original, and noting that "Rule 23 contemplates, and the district court should insist on, a conscientious representative plaintiff"). A class representative must also "'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Amchem Prods.*, 521 U.S. at 615, 117 S.Ct. at 2245 (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896 (1977)). "This requires the district court to ensure that there is no inconsistency between the named parties and the class they represent." *Uhl*, 309 F.3d at 985. Stated differently, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018. Finally, the adequacy-of-representation requirement is "concerned with the 'competency and conflicts of class counsel.'" *Ortiz*, 527 U.S. at 857 n.31, 119 S.Ct. at 2320 (quoting *Amchem Prods.*, 521 U.S. at 626 n.20, 117 S.Ct. at 2251).

13

Plaintiffs have satisfied the adequacy-of-representation requirement. First, Plaintiffs have claims that are typical of those brought by other class members, and their interests appear to be entirely consistent with those of the other class members because they – like the other class members – seek relief from AT&T's allegedly-unlawful tax collections. *See Amchem Prods.*, 521 U.S. at 615, 117 S.Ct. at 2245. Second, Plaintiffs' counsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement. *See Rand*, 926 F.2d at 598-99. Finally, class counsel have experience pursuing consumer-class-action cases and do not appear to have interests that conflict with those of the class.[4] *See Amchem Prods.*, 521 U.S. at 626 n.20, 117 S.Ct. at 2251.

### B.      Rule 23(b)(2) Requirements

Rule 23(b)(2) allows for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The proposed class satisfies Rule 23(b)(2)'s requirements because AT&T has acted on grounds that apply generally to the class, namely collecting taxes on Internet access services. *See Lemon*, 216 F.3d at 580.

---

[4] Plaintiff Wiand argues that one of Cooperating Counsel may be a witness in this case because he "recently gave AT&T sworn testimony in another case supporting AT&T's Motion to Dismiss based on the very same arbitration/class waiver provision which settlement counsel assert in their current Motion." (R. 54, Pl. Wiand's Resp. to Mot. for Prelim. Approval of Settlement at 12 n.7.) While Plaintiff Wiand asserts that this creates a conflict of interest, she does not explain how this testimony could be presented to the factfinder. In any event, AT&T has agreed in the Proposed Settlement Agreement not to raise affirmative defenses based on the arbitration and class-waiver provisions. (*See* 50-2, Settlement Agreement at § 3.)

14

### C.     Rule 23(b)(3) Requirements

Plaintiffs seek to have their class certified under Rule 23(b)(3).  "Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable."  *Amchem Prods.*, 521 U.S. at 615, 117 S.Ct. at 2245 (internal quotations omitted and adding: "Rule 23(b)(3) add[s] to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded."); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).  In formulating Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *Amchem Prods.*, 521 U.S. at 617, 117 S.Ct. at 2246.  In other words, Rule 23(b)(3) "was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *see also Ortiz*, 527 U.S. at 833, 119 S.Ct. at 2308.

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions of law or fact must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In assessing whether those requirements have been met, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

and (D) the likely difficulties in managing a class action.

*Id.*

### 1. Predominance

A party seeking class certification must do more than simply claim that an issue predominates. *See Harper*, 581 F.3d at 515. "The notion of predominance in the class action analysis is a relatively impalpable concept," *Simer*, 661 F.2d at 672, that is similar to Rule 23(a)(3)'s typicality requirement. *Amchem Prods.*, 521 U.S. at 623 n.18, 117 S.Ct. at 2249. Ultimately, it "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S.Ct. at 2249. Predominance also overlaps with the concept of manageability. *See Simer*, 661 F.2d at 677.

Plaintiffs have shown that common questions of law and fact predominate. Specifically, Plaintiffs claim that Defendants engaged in standardized conduct that violated laws that are common within each subclass, and the class and subclasses will therefore be cohesive. *Amchem Prods.*, 521 U.S. at 623, 117 S.Ct. at 2249. Further, pursuing this case as a class action will not present manageability problems because the class is being certified for settlement purposes only. *See Smith*, 387 F.3d at 614.

### 2. Superiority

A central question under the superiority requirement is whether the proposed class will be manageable, and here the proposed class certainly will be. *See id.*; *Chartwell Fin. Servs.*, 204 F.3d at 760. It will also be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs reside throughout the United States and would have a difficult and

16

costly task in seeking relatively small damages solely on an individual basis. *See Amchem Prods.*, 521 U.S. at 617, 117 S.Ct. at 2246 (noting that the Advisory Committee "sought to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results" (internal quotation omitted)).  Accordingly, class resolution would be superior to other available methods of pursuing these claims.

## II.    Preliminary Settlement Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").  As the Seventh Circuit has found, however, a class settlement is not

> an unmixed blessing.  Balanced against the 'overriding public interest in favor of settlement' are strong countervailing public policies which counsel against automatic judicial acceptance of such agreements.  First and foremost is the fact that most of those whose rights are affected by a class action settlement [–] members of the class [–] are not involved in its negotiation[,] nor are they present to voice their views in court. . . .  [T]here is [also] a concern with the interests of the public as a whole.  The substantive issues involved in many class actions reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established.

*Id.*

Due to these concerns, Rule 23(e) "requires court approval of any settlement that effects the dismissal of a class action.  Before such a settlement may be approved, the district court must

17

determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002) (quotation omitted); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (noting that "inspection of a settlement entails 'a careful inquiry into the fairness of the settlement *to the class members* before allowing it to go into effect'" (quoting *Mars Steel*, 834 F.2d at 682, with emphasis in original)). Courts must "'exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions,'" *Synfuel Techs.*, 463 F.3d at 652 (quoting *Reynolds*, 288 F.3d at 279), a task that is "akin 'to the high duty of care that the law requires of fiduciaries.'" *Id.* at 652-53 (quoting *Reynolds*, 288 F.3d at 280).

As the Seventh Circuit teaches,

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong*, 616 F.2d at 314 (internal citation and footnote omitted).

In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs.*, 463 F.3d at 653 (quoting

18

*Isby*, 75 F.3d at 1199); *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) (noting that "a district court may not assume a consent decree is prima facie fair and require the objectors to demonstrate its inadequacy"); *Armstrong*, 616 F.2d at 314; *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 C 5944 & 07 C 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) ("Although [the 'fair, reasonable, and adequate'] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). Courts "'do not focus on individual components of the settlement[], but rather view them in their entirety in evaluating their fairness.'" *Isby*, 75 F.3d at 1199.

When analyzing whether a proposed settlement is fair, reasonable, and adequate, courts "should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Additionally, a court "must not forget that it is reviewing a settlement proposal rather than ordering a remedy in a litigated case," *Armstrong*, 616 F.2d at 314-15, keeping in mind that the presence of more creative or traditional alternatives does not preclude settlement approval. *See Uhl*, 309 F.3d at 987. Although courts can later choose to deny final approval of a class settlement, they should not lightly give preliminary approval, especially in a case in which the costs of preliminary approval – including those related to providing notice – are as high as they will be in this case. Ultimately, after careful review, the Court preliminarily approves the Proposed Settlement Agreement.

19

### A.    Strength of Plaintiffs' Case vs. Settlement Offer

The most important settlement-approval factor is "'the strength of plaintiff's case on the

merits balanced against the amount offered in the settlement.'"  *Synfuel Techs.*, 463 F.3d at 653

(quoting *In re General Motors*, 594 F.2d at 1132).  "In conducting this analysis, the district court

should begin by 'quantifying the net expected value of continued litigation to the class,'" *id.*

(quoting *Reynolds*, 288 F.3d at 284-85), discounted to the present value using a reasonable

interest rate.  *Reynolds*, 288 F.3d at 285.  "To do so, the court should 'estimate the range of

possible outcomes and ascribe a probability to each point on the range.'"  *Synfuel Techs.*, 463

F.3d at 653 (quoting *Reynolds*, 288 F.3d at 285).  While "'a high degree of precision cannot be

expected in valuing a litigation,' the court should nevertheless 'insist that the parties present

evidence that would enable possible outcomes to be estimated,' so that the court can at least

come up with a 'ballpark valuation.'"  *Id.* at 653 (quoting *Reynolds*, 288 F.3d at 285).

Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889,

courts should not reject a settlement "solely because it does not provide a complete victory to the

plaintiffs."  *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence

of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss

philosophy of litigation in favor of a solution somewhere between the two extremes"); *In re*

*General Motors*, 594 F.2d at 1135 (stating that "the essence of a settlement is a bilateral

exchange" and that "'[t]he inherent nature of a compromise is to give up certain rights or

benefits in return for others'" (quoting *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416,

429 (7th Cir. 1977))).  Parties to a settlement benefit by immediately resolving the litigation and

receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to

achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain

that the relief afforded is substantially less than what they would have received from a successful

resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted and emphasis

in original).

"[A]n integral part of the strength of a case on the merits is a consideration of the various

risks and costs that accompany continuation of the litigation," *Donovan v. Estate of Fitzsimmons*,

778 F.2d 298, 309 (7th Cir. 1985), and here there will be significant risks and costs if the case is

not settled. The most obvious risk of continuing this litigation is that Plaintiffs will not be

successful. While the Court will not address the claims on the merits, *see Hiram Walker*, 768

F.2d at 889, Plaintiffs' action faces significant hurdles. AT&T has agreed not to argue, however,

that (1) Plaintiffs' claims must be arbitrated, (2) the proposed class cannot be certified, (3)

Plaintiffs lack standing, (4) the ITFA does not preempt the taxes at issue, and (5) the voluntary

payment doctrine bars Plaintiffs' claims.[5] (*See* R. 50-2, Proposed Settlement Agreement at § 3.)

Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not

as valuable as a present victory. Continued litigation carries with it a decrease in the time value

of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years

---

[5] As the Seventh Circuit has noted,

The point of the voluntary-payment doctrine is to prevent recovery when a
transfer was made pursuant to an agreement of the parties that allocated between
them the risk of any later-discovered mistake. But when the mistake relates to a
contingency not contemplated by the parties at the time of the voluntary payment,
a claim for restitution exists.

*CSX Transp., Inc. v. Appalachian Railcar Servs., Inc.*, 509 F.3d 384, 387 (7th Cir. 2007) (citing
Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. d (Tentative Draft No. 1,
2001)).

from now." *Reynolds*, 288 F.3d at 284; *see also Donovan*, 778 F.2d at 309; *Seiden v. Nicholson*,

72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is

certain is that plaintiffs would have spent a large amount of time, money and effort."). The

Proposed Settlement Agreement, on the other hand, provides immediate benefits. Specifically,

AT&T will stop collecting taxes on Internet access services within 30 days of the Court's

preliminary approval. That action, Movants contend, will result in a $1 billion benefit to the

class over the next several years. While significant, class members will only benefit from this

aspect of the Proposed Settlement Agreement if they continue to use Defendant's Internet access

services. *See Synfuel Techs.*, 463 F.3d at 654.

AT&T also has agreed to create an escrow account and coordinate tax refunds or credits

for Plaintiffs without requiring the submission of any claim forms. (R. 50-2, Proposed

Settlement Agreement at §§ 8.3-8.5.) Within 90 days of preliminary approval of the Proposed

Settlement Agreement, AT&T is obligated to begin filing refund and credit applications with the

roughly 2,000 taxing jurisdictions. (R. 50-2, Ex. N., Refund Procedures Protocol at § II.A.1.)

The creation of state-specific subclasses accounts for the fact that some states allow only AT&T

to seek refunds on behalf of customers, some allow AT&T and the consumer to seek refunds,

and some permit only consumers to seek refunds. For states in which only AT&T can seek a

refund or credit, AT&T has agreed to deposit the refund or credit into an escrow account

immediately upon receipt. (*See* R. 50-2, Proposed Settlement Agreement at §§ 8.3-8.5.) For

states that require AT&T first to refund or credit class members prior to the state providing a

refund or credit to AT&T, AT&T has agreed to deposit the appropriate amount of funds into an

escrow account contemporaneously with seeking a refund or credit. (*See id.* at § 8.7.) For states

22

that only allow class members to seek a refund, AT&T has agreed to provide the necessary information to class members so that they can seek the refunds and, should a dispute arise, pursue the refunds through administrative and legal remedies. (*See id.* at § 8.5.) Further, AT&T has agreed to refund any portion of vendor compensation it has received in connection with the challenged taxes. (*See id.* at § 8.13.) Finally, to ensure that all class members with valid claims receive some monetary relief in the event that taxing jurisdictions do not make a payment specific to that class member, the Proposed Settlement Agreement provides for a pro-rata distribution of refunds. (*See* R. 50-2, Ex. O, Plan of Distribution at § 4(a).)

Defendant has also agreed in the Proposed Settlement Agreement to waive its opposition to class certification and pay the expenses related to notifying the class, "which normally must be borne by the representative plaintiffs." *In re Mex. Money Transfer*, 267 F.3d at 746. This is a significant contribution in a case the involves millions of class members, as "[n]otice and a certification determination can be extremely costly matters which could be taxed against the class relief or serve as a deterrent to the filing of class actions." *Simer*, 661 F.2d at 665.

Challenges to the provisions allowing AT&T to (1) resume charging for Internet taxes and (2) prohibit others from taking certain positions with the taxing jurisdictions do not preclude preliminary approval. The former provision only allows AT&T to resume such taxation if "federal, state or local laws, statutes, regulations, administrative decisions or pronouncements, or the interpretation of any of the foregoing specifically requires, authorizes or permits the collection and payment of Internet Taxes." (R. 50-2, Proposed Settlement Agreement at § 8.2(b).) If a jurisdiction were to give AT&T the express authority to collect these taxes, it would be difficult to fault AT&T for resuming such taxation. The latter provision provides:

> AT&T Mobility shall have the right to review and comment on any filings or positions taken with the Taxing Jurisdiction and the right to prohibit the assertion of any positions in such filings that are made in the name of AT&T Mobility and deemed by AT&T Mobility to be inconsistent with the facts, contrary to law, or damaging to AT&T Mobility.

(*Id.* at § 8.9.) Plaintiff Kyle has not explained why AT&T would dedicate its efforts to needlessly obstructing class members' efforts to collect from the taxing jurisdictions, and Defendant has stated that the purpose of this provision is to protect itself from being sanctioned under rules similar to Federal Rule of Civil Procedure 11.[6] In any event, the Proposed Settlement Agreement provides that the Court will have continuing jurisdiction over the proceedings to supervise implementation of the settlement plan and ensure that the parties are proceeding as intended. (*Id.* at § 29.)

Movants have represented that hundreds of millions of dollars are at issue in this action, but they have not provided a more-definite figure of how much is at issue or exactly how much Plaintiffs can expect to recover. That is not problematic at this stage, however, because it appears that Plaintiffs would receive a high percentage of what is at issue – whatever that dollar value may be – under the Proposed Settlement Agreement. As such, this factor favors preliminary approval.[7]

---

[6] The Court granted Plaintiff Kyle's motion for leave to file a written response to Defendant's and Interim Class Settlement Counsel's submissions. (R. 73, 7/20/10 Minute Order.) Plaintiff Kyle, however, chose not to file any such submission, although his counsel argued at length during the July 8, 2010, hearing.

[7] One potential obstacle to final approval is the risk that certain class members will be unable to collect from the taxing jurisdictions. Plaintiff Wiand argues that states may not be willing to pay class members – promptly or otherwise – due to budgetary, statute-of-limitations, or other issues. Movants have numerous responses. Defendant represents that "***every*** class member will receive a cash payment as a result of the settlement" (R. 67, Def.'s Supplemental Mem. at 24 (emphasis in original)); Interim Class Settlement Counsel states that the number of

### B.     Likely Complexity, Length, and Expense of Litigation

Significantly, AT&T service agreements contain provisions requiring customers to

pursue all disputes with AT&T on an individual basis through arbitration.  Plaintiffs therefore

will have difficulty pursuing their claims in court or through a class action.  *See Livingston*, 339

F.3d at 559 (noting that courts are "obliged to enforce the type of arbitration to which these

parties agreed, which does not include arbitration on a class basis" (quotation omitted)); *Champ*

*v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995) ("Since the parties' arbitration agreement

does not expressly provide for class arbitration, the district court correctly concluded that it was

prohibited from reading such a procedure into these arbitration agreements."); *Jackson v. The*

*Payday Loan Store of Ill., Inc.*, No. 09 C 4189, 2010 WL 1031590, at *5 (N.D. Ill. Mar. 17,

2010).  The Supreme Court's decision to grant certiorari in a case dealing with the arbitration

agreement at issue in these cases further highlights the uncertainty regarding whether these

claims may be pursued in court.  *See AT&T Mobility LLC v. Concepcion*, 130 S.Ct. 3322 (2010).

---

class members whose claims under the Proposed Settlement Agreement are barred by the statute
of limitations is "very small" (R. 65, Interim Class Settlement Counsel's Reply Mem. at 28);
Movants represent that Plaintiffs' counsel have "met with key state revenue officials in six
taxing jurisdictions to verify the efficacy of the settlement plan" (R. 50, Joint Mem. at 20);
Defendant argues that "even when a state or local government is unable to make a cash outlay to
provide refunds, it is commonplace for taxing authorities to agree to provide credits against
future taxes" (R. 67, Def.'s Supplemental Mem. at 10); and an affiant has sworn that "state and
local governments are required to and actually do either refund taxes or issue tax credits to
persons or entities that have paid a sales or gross receipts tax that the law did not require them to
pay." (R. 64-1, Eidman Aff. at ¶ 6.)  While this and other information in the record is enough for
preliminary approval, to receive final approval the parties are expected to provide further
assurance that the class members will receive adequate payments in return for releasing
Defendant from their claims.  The parties should present at the fairness hearing, for example,
more-concrete evidence of (1) the amount of money that Plaintiffs lost as a result of the
challenged taxes, (2) the amount of payments that Plaintiffs will receive as a result of the
Proposed Settlement Agreement, and (3) how much money Plaintiffs will save from AT&T's
cessation of the challenged taxes.

This challenge means that Plaintiffs' claims will likely require a great deal of time and money to pursue if they are not resolved through settlement. The relief for which the Proposed Settlement Agreement provides therefore appears to be at least comparable to the result that Plaintiffs would be able to achieve through continued litigation. *See Isby*, 75 F.3d at 1199.

### C.   Opposition to the Settlement

The number of objectors alone does not mandate or prohibit approval of a class settlement. *See Hiram Walker*, 768 F.2d at 891-92; *In re General Motors*, 594 F.2d at 1137. "[W]hile a district court should be hesitant to infer that the class supports a settlement merely because its members are silent, where this silence is coupled with other indicia of fairness, it provides further support of approval." *Armstrong*, 616 F.2d at 326 (internal citation omitted). Because the parties have not yet sent the notice, it is premature to fully assess this factor. The Court notes, however, that thus far only three potential class members have expressed displeasure with the Proposed Settlement Agreement. (*See* R. 54, Pl. Wiand's Resp. to Mot. for Prelim. Approval of Settlement; R. 56, John Gaffigan's Mot. for Leave to Intervene; R. 71, Pl. Kyle's Mot. for Leave to File Written Resp.)

### D.   Counsel's Opinion

Courts are "'entitled to rely heavily on the opinion of competent counsel,'" *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200, and counsel for Defendant and Interim Settlement Class Counsel are highly competent. Further, there is no indication that the Proposed Settlement Agreement is the victim of collusion. *See Isby*, 75 F.3d at 1200. Indeed, class counsel will only be paid from state-specific escrow accounts if those accounts are funded through refunds or credits from the taxing jurisdictions, and they have

26

agreed to seek fees that are no greater than the lesser of ten percent of the aggregate value of the settlement or twenty-five percent of the aggregate value of the class damages actually recovered. (*See* R. 50-2, Proposed Settlement Agreement at § 12.)

### E.    Stage of the Proceedings and Amount of Discovery Completed

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325.  The Seventh Circuit has cautioned that

> [t]he danger of a premature, even a collusive, settlement is increased when . . . the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement agreement generates. . . . And where notice of the class actions is . . . sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a fait accompli.

*Mars Steel*, 834 F.2d at 680-81.

The lack of discovery prior to settlement, however, does not preclude a court from approving a settlement.  *See Kaufman*, 264 F.R.D. at 447.  Because counsel have conducted a significant amount of informal discovery and "dedicated a significant amount of time and resources to advancing the underlying lawsuits" (R. 47, 6/23/10 Minute Order Appointing Interim Settlement Class Counsel at 3), this factor does not weigh against preliminary approval. Additionally, the focus of this litigation appears to be more on legal than factual issues, and there is no indication that formal discovery would have assisted the parties in devising the Proposed Settlement Agreement.

The Proposed Settlement Agreement appears to reflect the unique circumstances underlying this case: AT&T essentially acts as a pass-through – while retaining a negligible amount of money through vendor's compensation – to taxing authorities who will ultimately

make substantial payments directly to the class members.[8]  By giving preliminary approval to the Proposed Settlement Agreement, however, the Court is not giving it momentum.  *See Mars Steel*, 834 F.2d at 684-85.  The Court merely finds that "the proposed settlement is 'within the range of possible approval.'"  *Armstrong*, 616 F.2d at 314.  The Court notes that it will require additional information, including detailed financial information, before giving final approval.  Indeed, the Court will not give final approval unless the parties show after a hearing that the Proposed Settlement Agreement is fair, reasonable, and adequate under all of the circumstances.  *See* Fed. R. Civ. P. 23(e)(2); *Armstrong*, 616 F.2d at 314 (noting that during a fairness hearing a court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate" (quotations omitted)).

## III.    Class Notice

"When no prior notice of the pendency of the Rule 23(b)(3) class action is given, the rights of absent class members to exclude themselves from the action under Rule 23(c)(2) are preserved by combining the notice of settlement hearing with notice of opportunity for exclusion from the action."  4 Newberg on Class Actions § 11:30 (4th ed. 2010).  The Federal Rules of Civil Procedure require that:

> [f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from

---

[8]  While certain taxing jurisdictions allow Defendant to retain "vendor's compensation" in recognition of its efforts to collect taxes, the Proposed Settlement Agreement requires Defendant to return those funds.  (*See* R. 50-2, Proposed Settlement Agreement at § 8.13.)

28

the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also In re Allstate Ins. Co.*, 400 F.3d 505, 506 (7th Cir. 2005);

*Kaufman*, 264 F.R.D. at 445-46. The rationale behind this class-notice requirement is that

"when damages are sought, it is quite likely that some individual class members will want to sue

on their own (provided that the potential damages per class member are substantial) rather than

participate in a class-wide award, because they may have greater than average damages." *In re*

*Allstate*, 400 F.3d at 507; *see also In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 333

F.3d 763, 769 (7th Cir. 2003) ("Preserving the right to litigate individually, as one's own

champion, is the point of opting out. The opt-out avoids any risk of the class's loss on the merits

and also forswears any opportunity to take advantage of the class's victory.").

Further, when presented with a proposed class settlement, a court "must direct notice in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

23(e)(1). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of

the nature of the pending action, the general terms of the settlement, that complete and detailed

information is available from the court files, and that any class member may appear and be heard

at the hearing." 3 Newberg on Class Actions § 8:32 (4th ed. 2010).

Because "the settlement or dismissal of the case will be res judicata as to claims of the

individual class members," "[t]he purposes served by Rule 23(e) are most evident in the case

where a class has been certified and the case is settled or dismissed." *Simer*, 661 F.2d at 664.

Those purposes are twofold. "First, it protects the class defendant from plaintiffs who append a

class claim merely to strengthen their bargaining power in settlement discussions." *Id.* at 665

29

(noting that the time and cost of effecting notice, which requires plaintiffs to carefully consider the consequences of filing class actions, deters frivolous class actions). Second, "requiring notice to putative class members [] insures that the putative class members' interests will be protected." *Id.*; *see also In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032-33 (N.D. Ill. 2000) ("The purpose of class notice is not to canvass class members regarding their preferences . . .; it is to advise them of the terms of the agreement which has been reached and provide those who disapprove of those terms an opportunity to object or to opt out.").

The proposed notices satisfy Rule 23's requirements. First, the methods for delivering the notices are sufficient. *See Kaufman*, 264 F.R.D. at 446 ("Publication of notice in a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by publication."). The notice plan provides that all class members who are current AT&T customers will receive a notice through (1) a message sent with the monthly bill and (2) a text message directing them to further information. (*See* R. 50-2, Proposed Settlement Agreement at § 16.) The notice plan also provides that all class members who are former customers will receive notice via a message sent to the email address that the customers had provided to AT&T or – if a customer did not provide an email address or her email address is no longer valid – via United States Mail. (*Id.*) Finally, AT&T has agreed to publish a notice two times in the *USA Today* newspaper. (*Id.*)

While Plaintiff Wiand argues that the notices are deficient, they contain all of the information that Rule 23 requires. *See* 4 Newberg on Class Actions § 11:53 (4th ed. 2010) ("The notice need not be unduly specific. The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably

calculated, under all of the circumstances, to apprize interested parties of the pendency of the

settlement proposed and to afford them an opportunity to present their objections."); 7B Charles

Alan Wright, Arthur W. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1797.6 (3d ed. 2010)

(noting that "courts have approved notices that did not contain some of the precise details of the

settlement, such as the distribution or allocation plan, or the amount of attorney fees to be taken

out, as long as sufficient contact information is provided to allow the class members to obtain

more detailed information about those matters").  The notice plan calls for informing class

members of the Proposed Settlement Agreement, how to object, and how to obtain additional

information, among other things.  Furthermore, the direct-bill, text-message, long-form,

publication, and mailed notices all contain language that is clear, concise, and easy to

understand.

 The two-paragraph direct-bill notice, which – together with the text-message notice –

will be sent to all class members who are current AT&T customers, provides:

> If you were charged taxes, fees or surcharges on internet access through smart
> phone data plans, laptop connect cards or pay-per-use data services on bills issued
> from November 1, 2005 through [_____], you may be entitled to benefits
> under a class action settlement.  To receive benefits, you need to do nothing at
> this time. You may opt out of this settlement, but your request to exclude yourself
> must be received by xx/xx/xx.  You may also object to the settlement by this date.
> . . .  If you do not opt out, you will be bound by the settlement and give up the
> right to file your own lawsuit.  You may also remain part of the class and hire
> counsel at your expense.  However, Settlement Class Counsel have been
> appointed to represent you and can be contacted at: Bartimus Frickleton
> Robertson & Gorny, P.C., P.O. Box 480020, Kansas City, MO 64148.  To learn
> more about the settlement, including its benefits, how to opt-out or object, the
> names of the parties, and other information, go to www.attmsettlement.com or
> call 1-800-xxx-xxxx.

(R. 50-2, Ex. B, Direct Bill Notice of Class Action Settlement.)  The two-sentence text-message

notice states: "NOTICE OF CLASS ACTION SETTLEMENT – You may be entitled to benefits

31

under a class action settlement.  Go to www.attmsettlement.com or call 1-800-xxx-xxxx."  (R.

50-2, Ex. C, Text Message Notice of Class Action Settlement.)

Further, the notice that will be published twice in the national newspaper *USA Today*

contains straightforward headers that are meant to answer readers' questions.  Those headers

include "What is this Notice?," "What are the Lawsuits About?," "Who is Included?," "What

does the Settlement Provide?," "What are my Legal Rights?," "Who Represents Me?," and

"When Will the Court Consider the Proposed Settlement?"  (R. 50-2, Ex. E, Legal Notice.)  The

publication notice further specifies the nature of the action, a class description, the class claims,

that a class member may enter an appearance through an attorney, that the court will exclude

from the class any member who requests exclusion by mailing an exclusion request by a date

certain, and the binding effect of a class judgment if the Court approves the settlement.  (*Id.*)

Further, the notice directs readers that they can obtain further information by contacting the

settlement administrator, visiting the settlement website, or calling a toll-free number.  (*Id.*)

The publication notice will also be emailed to former customers for whom AT&T has an

email address.  (R. 50-2, Proposed Settlement Agreement at § 16.)  For those former customers

for whom AT&T does not have email addresses, AT&T will send the following notice via

United States mail to the person's last-known address:

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
**YOUR LEGAL RIGHTS MIGHT BE AFFECTED BY THIS**
**SETTLEMENT.**
**PLEASE READ THIS NOTICE CAREFULLY.**
You received this card because AT&T Mobility's records reflect that you were a
customer of AT&T Mobility and were charged taxes, fees or surcharges ("Internet
Taxes") on internet access through certain services including iPhone data plans,
Blackberry data plans, other smart phone data plans, laptop connect cards and
pay-per-use data services.  The lawsuits claim that AT&T Mobility charged
Internet Taxes in violation of the Internet Tax Freedom Act and other state laws.

AT&T Mobility asserts it has followed the law and denies the allegations in this case. A settlement of these lawsuits has been reached. Under the proposed settlement, **you may be entitled to benefits. You can learn more about the settlement at www.attmsettlement.com or call 1-800-xxx-xxxx.** To read a more detailed description of the terms of the proposed Settlement and to read the full Notice of Proposed Class Action Settlement, which more fully describes your rights, visit the website, www.attmsettlement.com or call 1-800-xxx-xxxx. If you wish to receive benefits under the Settlement, you do not need to take any action. If the Settlement is approved by the Court, any legal action you may have against AT&T Mobility related to the charging of Internet Taxes will be released. If you do not wish to be bound by the terms of this Settlement, you must exclude yourself from the Settlement. You may formally object to the Settlement. Visit the Settlement website for information on how to do so.

(R. 50-2, Ex. F, Mailed Notice (emphasis in original).)

Movants have further represented that the settlement Internet site will provide additional information to class members, including the settlement agreement, Court orders, and deadlines. Further, the Proposed Settlement Agreement provides that any class member who requests a more-inclusive notice will receive a twelve-page notice that includes more-detailed information in easy-to-understand language and also instructs the recipient how to receive still further information.[9] (R. 50-2, Proposed Settlement Agreement at § 16.) This thorough notice plan satisfies the requirements of Rule 23.

## IV. Notice and Settlement Administrator

Finally, Movants request the appointment of ARPC as notice and settlement administrator. According to Movants, ARPC has significant experience administering complex class settlements, and "[n]o class representative and no counsel representing any party has any financial interest in ARPC nor does any class representative or counsel for any party serve as an

---

[9] Movants are directed to delete the reference in the more-detailed notice to a preliminary injunction, as the Court has not entered such an injunction. (*See* R. 50-2, Ex. D, Notice at 7.) Movants may raise the injunction issue once the opt-out period has expired.

officer[,] director, agent, or employee of ARPC." (R. 50, Joint Mem. at 25.)

The Court appoints ARPC as notice administrator. As one treatise put it:

> Information engineering is an absolute necessity in the administration of class
> settlements. Mailing lists of class members must be compiled and maintained,
> proof of claim forms must be collected and evaluated, notices of hearings must be
> mailed, and settlement checks must be printed and disseminated. In addition, the
> court must receive affidavits of compliance and complete summaries of all
> transactions. Class action counsel in many cases have employed data processing
> services to assist them.

4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:36

(4th ed. 2010). Especially given the complexity and size of this case, ARPC's services in

connection with implementing the notice plan will be quite helpful. The Court will address

whether to appoint ARPC as settlement administrator if and when that issue ripens.

## CONCLUSION

For the foregoing reasons, the Court grants the Joint Motion and certifies a settlement

class consisting of:

> All persons or entities who are or were customers of AT&T Mobility and who
> were charged Internet Taxes on bills issued from November 1, 2005 through the
> final date on which AT&T Mobility issues bills to customers prior to
> implementing the billing system changes pursuant to Section 8.1 of the Settlement
> Agreement. Excluded from the Settlement Class are: (i) AT&T Mobility, any
> entity in which AT&T Mobility has a controlling interest or which has a
> controlling interest in AT&T Mobility, and AT&T Mobility's legal
> representatives, predecessors, successors and assigns; (ii) governmental entities;
> (iii) AT&T Mobility's employees, officers, directors, agents and representatives;
> and (iv) the Court presiding over any motion to approve this Settlement
> Agreement.

The Court further certifies District of Columbia, Puerto Rico, and forty-five state-specific

subclasses for:

> All persons or entities who are or were customers of AT&T Mobility and who
> were charged Internet Taxes in [STATE] on bills issued from November 1, 2005

through the final date on which AT&T Mobility issues bills to customers prior to implementing the billing system changes pursuant to Section 8.1 of the Settlement Agreement.  Excluded from the [State] Settlement Class are: (i) AT&T Mobility, any entity in which AT&T Mobility has a controlling interest or which has a controlling interest in AT&T Mobility, and AT&T Mobility's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) AT&T Mobility's employees, officers, directors, agents and representatives; and (iv) the Court presiding over any motion to approve this Settlement Agreement.

The Court further appoints as Settlement Class Representatives Plaintiffs Andy Armstrong, Ronald Bendian, Michael Bosarge, Eric Bosse, Vicki L. Campbell, Harvey Corn, Pam Corn, Matthew Cranford, Steven A. DeVore, Jane F. Edmonds, Heather Feenstra-Kretschmar, Adrienne M. Fox, Richard Garner, Stephen S. Girard, David Guerrero, Christopher R. Havron, Christopher Hendrix, Martin Hoke, Meri Iannetti, Christopher Jacobs, Kathy J. Johnson, Jamie Kilbreth, Bert Kimble, Vickie C. Leyja, Jonathan Macy, Rick Manrique, Heather Mazeitis, Bonnae Meshulam, Miracles Meyer, Audrey J. Mitchell, Adrienne D. Munson, Jill Murphy, Gira L. Osorio, Sara Parker Pauley, Joseph Phillips, Heather Rahn, David Rock, Lesley Rock, William J. Rogers, James Marc Ruggerio, Ann Marie Ruggerio, James Shirley, Randall Shuptrine, John W. Simon, Karl Simonsen, Donald Sipple, James K.S. Stewart, Dorothy Taylor, Kirk Tushaus, Matthew Vickery, John W. Wallace, Eleanor T. Wallace, Craig Wellhouser, Aaron White, William A. Wieland, Robert Wilhite, and Penny Annette Wood.  The Court also appoints Bartimus Frickleton Roberson & Gorny, P.C. and The Huge Law Firm PLLC as Settlement Class Counsel.  Further, the Court preliminarily approves the Proposed Settlement Agreement, approves the notice plan, and appoints Analysis Research Planning Corporation as notice administrator.

The class notices must be sent by October 29, 2010, the publication notice must be published twice in the *USA Today* by October 29, 2010, and Defendant shall file an affidavit or declaration that such notice has been provided by November 19, 2010.  Settlement Class Counsel shall file its application for class representatives' fees, attorneys' fees, costs, and expenses by December 10, 2010, and potential class members must have their opt-out requests postmarked by December 17, 2010.  Objections and notices of appearance must be filed by December 17, 2010.  All papers in support of final approval shall be filed by January 6, 2011.  The Court will hold a fairness hearing on February 10, 2011 at 9:00 am.

Dated:  August 11, 2010                                    ENTERED:


                                                           _____
                                                           AMY J. ST. EVE
                                                           United States District Court Judge